WILLARD BARTLETT, J.
The defendant maintains an ■electric railway in Brooklyn, which passes through Thirty-Ninth' street. According to an expert electrician, who was a witness for the plaintiff, the trolley wire is the positive and the rails form the negative pole, and the current, in the ordinary operation of the cars, passes from the overheard wires to the motor, and from the motor to the wheels, and from the wheels to the track. The overhead wires are insulated, so as to prevent the positive current from being conveyed away through the supporting trolley poles to the ground. This being the condition of things, the plaintiff, an expressman, was driving through Thirty-Ninth street on August 21, 1895, when his horse stepped on one of the rails of the defendant’s electric line with his left foot, sprang suddenly up into the air, and fell down upon the track, dying. The plaintiff, as he testifies, jumped out of his wagon, and, rushing to the horse’s head, seized the hames, when he himself received a shock which distorted his hands, and produced in them a sensation of numbness that lasted several weeks. The *540 horse died in a few minutes. The present suit was instituted in the county court of Kings county to recover damages for the loss of the animal, whose value was proved to be from $100 to $250. The learned trial judge dismissed the complaint, holding that the action could not be sustained, and saying to plaintiff’s counsel :
“ This road was lawfully constructed, and there is no proof in the case that there was any fault in its construction, or that in its running there was any negligence. I think you are bound to show at least some fact from which an inference of negligence could be drawn. I am of the opinion that it would be mere speculation for the jury to say that this shock was the result of negligence, or inaction, or want of repair, on the part of this defendant.”
We find it impossible to take the same view of the proof. On the contrary, we think there was clearly enough in the plaintiff’s evidence to call upon the defendant for some explanation of the accident. That evidence amply warranted the inference that the horse was killed by an electric shock received from some source. The defendant confessedly had established -and was operating a railway which.employed electricity in wires over the street and in rails upon its surface. Here were sources from which, or agencies by which, an electric current eould be generated, under such conditions, and with such direction and force, as to be capable of killing a horse traveling along the roadbed, and touching one of the rails with his foot. It is true, the expert testimony indicated that such an accident could not occur unless, through the defective insulation a£ the overhead wires, some portion of the positive current was withdrawn therefrom, and found its way into the ground or other surface upon which the animal was stepping at the time he also came into contact with the negative rail; but the very accident itself tended to show that such defective insulation existed, or some other condition which would produce the same effect. The plaintiff or any other traveler suffering a similar misadventure could have no means of ascertaining the precise state of the defendant’s plant in respect to insulation or in respect to contact, with other sources of electrical energy. The fact that the defendant brought electricity into the street for use as a motive power, and the fact that electricity so employed was capable of escaping in such a w.ay as to produce the casualty which actually took place were sufficient, taken together, to justify the inference that the accident was due to the agency of the defendant, in the absence of proof that it was otherwise caused. The maxim “ Res ipsa loquitur” is directly applicable. Scott v. Docks Co., 3 Hurl. & C. 596; Kearney v. Railroad Co., L. R. 5 Q. B. 411, L. R. 6 Q. B. 759. The learned counsel for the respondent, in his brief, apparently assumes that this doctrine can not be invoked unless the facts are such as to exclude every hypothesis but that of the defendant’s negligence, and argues that the railroad in Thirty-Ninth street might have been in perfect order, and that the accident might have been occasioned by the carelessness of third persons engaged in stringing telegraph or telephone or electric light wires. But the rule is one which relates merely to negli *541 gence prima facie, and it is available without excluding all other possibilities. The case of the warehouseman who stores barrels furnishes a good example of the proper application of the doctrine. “It is the duty of persons who keep barrels in a warehouse to take care that they do not roll out,” said Chief Barron Pollock in Byrne v. Boadle, 2 Hurl. & C. 722, “and I think that such a case would, beyond all doubt, afford prima facie evidence of negligence.” And yet, while proof of injury to the plaintiff by the fall of such a barrel would sustain a verdict in his favor against the warehouseman, in the absence of a sufficient explanation constituting a defense, nevertheless the prima facie case might be completely overcome by evidence in behalf of thé defendant, who might prove, for instance, that the accident was wholly due to the malicious act of a trespasser upon his premises. So in the case of Kearney v. Railway Co,, supra, where the plaintiff was injured by a fall of a brick from a railway bridge, just after a train had passed over it, it was held that the accident itself gave rise to a presumption of negligence, notwithstanding the possibility that the brick might have been loosened by the action of frost or some sadden change in the temperature operating so rapidly that the utmost care could not have prevented its fall. The doctrine of res ipsa loquitur simply calls upon the defendant, after proof of the accident, to give such evidence as will exonerate him, if any there be, and relieves the plaintiff from the burden of proving the non-existence of an adequate explanation or excuse.
We are asked wholly to discredit the plaintiff’s evidence, because there is some testimony in the record to the effect that an electric shock sufficient to-have killed his horse, would have left marks on the animal’s body. As to this point it is sufficient to say that the case does not show whether there were any scars on the horse or not.
The exceptions must be sustained, and a new trial granted, with costs to abide the event All concur.