employés to testify, and the employés of corporations are no more exempt from testifying in actions between third persons, before trial, or on the trial of actions, than are the employés of individuals or firms. Section 868 of the Code of Civil Procedure expressly provides that books or papers belonging to corporations must be produced on a trial under a subpœna duces tecum. The fact that the acts for which penalties are sought to be recovered in this action are misdemeanors, under section 408a of the Penal Code, as amended by chapter 692 of the Laws of 1893, and by chapter 426 of the Laws of 1894, is no reason for denying the plaintiff the right to examine third persons. Under section 148 of the Code of Criminal Procedure, witnesses may be compelled to testify to the commission of offenses by others upon an application for a warrant.

The order appealed from should be affirmed, with $10 costs and disbursements. All concur.

HARDIN, P. J. I think, under sections 871 and 872, subd. 7, Code Civ. Proc., the court had power to require persons not a party to the release to be examined (Horst v. Brewing Co., 1 App. Div. 629, 37 N. Y. Supp. 3), and therefore I vote to affirm, upon the within opinion.

---

(18 App. Div. 267.)

### JONES v. UNION RY. CO. OF NEW YORK CITY.

(Supreme Court, Appellate Division, Second Department. June 15, 1897.)

1. TRIAL—SUFFICIENCY OF PLAINTIFF'S EVIDENCE—WAIVER.

If, at the close of a plaintiffs' case, the defendant believes that no cause of action has been made out, he can obtain a review of an erroneous ruling on the point only by letting the case stand without further evidence. If he enters upon his proof, the question never is whether the plaintiff's evidence was sufficient to justify its submission to the jury, but whether, on the whole case, there is a question of fact as to the defendant's liability.

2. NEGLIGENCE—RES IPSA LOQUITUR.

In an action against a street-railway company for personal injuries, it appeared that one of the span wires, supporting an electric trolley wire, belonging to the defendant, broke, and the end, in falling, struck the plaintiff as he stood on the sidewalk, and burned out his eye. *Held*, that the doctrine res ipsa loquitur applied, and there was a presumption of negligence on the defendant's part, which it was called upon to explain or rebut.

3. SAME—PROXIMATE CAUSE—INSTRUCTIONS.

It is error to charge a jury, in an action for negligence, that the defendant is liable, provided the accident can be attributed to the defendant's want of reasonable care; since it must be shown that the injury not only could have been, but was, so caused.

4. SAME—BURDEN OF PROOF—ERROR CURED.

It is also error to charge a jury that, when evidence raising a presumption of negligence has been given by the plaintiff, the burden is upon the defendant to show that the injury to the plaintiff was not so caused; and the error is not cured by a previous statement that the burden of proof is on the plaintiff, when the court, after the point has been raised by counsel, reiterates the statement that evidence of negligence throws the burden on the defendant.

Appeal from trial term.

Action by William J. Jones against the Union Railway Company of New York City. From a judgment entered on a verdict in favor

of plaintiff, and from an order denying a new trial, defendant appeals. Reversed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and BRADLEY, JJ.

William N. Cohen and Nathan Ottinger, for appellant.
William P. Burr, for respondent.

CULLEN, J. This action is to recover damages for personal injuries alleged to have been caused by the negligence of the defendant. The defendant maintains a trolley railroad line on Third avenue, in the city of New York. The occurrence which is the subject of the action happened about 2 o'clock the night of June 4, 1893. The plaintiff was standing at or near the corner of Third avenue and the Boulevard, when one of the span wires that support the trolley wires of defendant's railroad broke. The wire swung to the sidewalk, where plaintiff was standing, the broken end striking his hat. The wire burned through the brim of his hat, and came in contact with one of his eyes, he thereupon falling unconscious. The eye was destroyed, and the evidence tended to show that the plaintiff's brain and faculties were seriously impaired. At the scene of this occurrence an electric light company maintains a circuit of lights and wires. The electric light wires had been strung before the defendant's railroad was constructed, and these wires came in close proximity with the span wires of the railroad.

We think the case was properly one for the jury. A large portion of the appellant's brief is devoted to the argument that, at the close of the plaintiff's case, the defendant's ownership of the wire which broke, and injured the plaintiff, had not been established, and that no case had been made out to which the defendant was called upon to respond. This is of no importance, for it appeared by the defendant's evidence, without dispute, that the wire which broke and caused the injury was its span wire. When the defendant enters into its proof, the question never is whether the plaintiff's evidence is sufficient to justify the submission of the case to the jury, but whether, on the whole case, there is a question of fact as to the defendant's liability. If, at the close of a plaintiff's case, the defendant is confident that no cause of action has been made out, the only method of securing a review of an erroneous ruling on the point is to let the case stand without further evidence. If the defendant enters upon its evidence, it takes the chances of supplying the deficiencies of the plaintiff's case. At the close of the testimony, the case stood substantially in this position: It was undisputed that the defendant's span wire broke, and, falling, struck the plaintiff's eye, destroying it. When this fact appeared, we think that the doctrine res ipsa loquitur applied, and that there was a presumption of negligence on the defendant's part, which it was called upon to explain or rebut. This proposition the defendant vigorously assails, but we do not see why the rule does not apply. The res in this case was not the electric current, but the breaking of the defendant's wire. It was the wire that inflicted the injury. No matter how intense the electric current,

had the wire not broken, and fallen on the plaintiff, no injury could have happened to him. Nor is the rule inapplicable because the plaintiff was not a passenger of the defendant, but a mere third party, to whom it owed only the duty of ordinary care.

The leading case in this state on the subject, that of Mullen v. St. John, 57 N. Y. 567, occurred between parties between whom there was no contractual relation. A building fell or collapsed, and injured a traveler on the highway. It was held to be incumbent on the defendant to show how the building fell, without fault on his part.

The principle has been twice applied by us within the last few months. In Gilmore v. Railroad Co., 6 App. Div. 117, 39 N. Y. Supp. 417, the plaintiff, when entering the car and on the platform, was struck by the brake handle, which was suddenly set free in some unexplained manner. It was held that the occurrence called for explanation, and that a nonsuit was erroneous.

In Clarke v. Railroad Co., 9 App. Div. 51, 41 N. Y. Supp. 78, the plaintiff's horse, while crossing the rails of defendant's railroad, was killed by an electric shock from some source. The defendant operated its road by electricity. It was there said by Justice Bartlett:

"The plaintiff, or any other traveler suffering a similar misadventure, could have no means of ascertaining the precise state of the defendant's plant in respect to insulation, or in respect to contact with other sources of electrical energy. The fact that the defendant brought electricity into the street for use as a motive power, and the fact that electricity so employed was capable of escaping in such a way as to produce the casualty which actually took place, were sufficient, taken together, to justify the inference that the accident was due to the agency of the defendant, in the absence of proof that it was otherwise caused. The maxim res ipsa loquitur is directly applicable."

The case of Searles v. Railway Co., 101 N. Y. 661, 5 N. E. 66, is not in point. There the plaintiff was injured by a cinder from a locomotive on the elevated railroad. It was held that the mere escape of the spark or cinder did not establish negligence. But the ground of this decision was that, so far from the escape of sparks from a locomotive being presumptive evidence of negligence, it is a matter of common knowledge that no locomotive can be run without the escape of sparks. Had the sparks or cinders been shown to have been an unusual size, or to have been emitted in extraordinary quantities, then, undoubtedly, the rule of res ipsa loquitur would have applied, and the defendant been called upon to explain the occurrence.

The defendant's evidence was to the effect that the span wire in question, a No. 4 guage, galvanized steel wire, was of the kind usually employed at the time for such purpose in the construction of trolley roads. It appears that the more recent practice is to substitute for a single wire a braided wire or wire composed of several strands; but even the plaintiff's experts, while criticising the use of the single wire, concede that at the time of the accident the use of such a wire was as common as that of the braided wire. The identity of the particular wire seems to have been conceded. We think, therefore, that the defendant could not be charged with negligence in using wire of an improper character. The testimony of the defendant's lineman showed that the broken end was, as he termed it, "drawn to a pencil point."

Now, if this was the condition of the wire when it was originally put up or had been worn to that size by ordinary use, I think the jury could have found that there was negligence either in stringing or maintaining a wire with such a defect. If the condition of the wire was caused by something extraordinary happening at the time or immediately before the wire broke, it plainly proceeded from electrical causes. If this theory be correct, then a current was communicated to the span wire (which should be dead) from either the trolley wire or the wire of the electric light company. This current fused the wire, and caused it to break. We are not sufficiently versed in the science of electricity to express with certainty an opinion as to which was the source of the current. But even to us it appears clear that at some point the wire must have become charged with a current of electricity. When the wire struck the plaintiff, it must have been heated to a very high degree, for it burnt a hole through his hat, as well as burning out his eye. There was no possible source of heat in the vicinity except such as could be developed from the passage of an electric current. Therefore the wire must either have had an electric current passing through it before it broke, and been heated by the current, or, after it broke, it must have fallen on a live wire, and received a current from it. If the latter was the fact, then, as already stated, the jury might find the defendant negligent on account of the attenuated condition of the wire. If the former was the case, it becomes necessary to consider whether, in any aspect of the evidence, the jury could have attributed negligence to the defendant. The evidence of the lineman was that the wire broke some six feet beyond the insulator which carried the trolley wire. From this fact I should think it probable that the current did not proceed from the trolley wire, though, if it did, it would be for the defendant to explain why the trolley wire was not resting on the insulator. If the current did not proceed from the trolley wire, it must have come from the electric light wire; and it now remains for us to consider whether, assuming that this was the cause of the breaking of the span wire, the jury could hold the defendant responsible for it. The electric light wires were strung on the street before the trolley wires. Presumably, they were lawfully strung there. The defendant owed the duty of constructing its plant on the street in a manner reasonably safe and secure so far as the public who might use the street were concerned. It is evident from the testimony (if, indeed, it is not a matter of common knowledge, of which we may take notice) that the great danger in highways from the presence of numerous wires, some of them carrying electric currents of high intensity, is that those wires may come in contact; and a wire designed either to carry no current, or transmit one of but slight power, may become charged with a force dangerous to life. Electric light wires, of all wires in common use, carry the most powerful currents. It is stated in the testimony that the ordinary intensity of such a current is 3,000 volts, while that of the trolley wire is only 500 volts, and, as for telephone or telegraph wires, that the current through them is of such slight intensity as not to be regarded. It also appears by the evidence that the insulation of wires is not always perfect; that moisture tends to render substances conductors of the electric current, which,

when dry, would be insulators; that, also, the insulating material may be worn off by use or time. From this I think it fairly might have been claimed before the jury that it was dangerous to string the span wires too close to the electric light wires, at least without taking particular precautions against the danger of the light wire coming in contact with the span wire. The defendant's lineman testifies that, when he inspected the wires on the afternoon before the accident, the electric light wire was, as far as he could judge, about two inches from the span wire. It was the duty of the defendant not only to construct, but to maintain, its plant reasonably safe and secure for the public; and whether the wires were originally strung so close together, or whether the light wire had fallen or sagged towards the span wire, it was a question of fact whether the defendant should not have anticipated danger from the close proximity of the wires, and have taken measures to guard against that danger.

We have thus discussed at much length the facts of the case, in answer to the elaborate argument of the defendant that there was no sufficient evidence upon which its negligence could be predicated. We do not say that the two conclusions we have stated should be found from the evidence. We merely say that the jury could have found them from the evidence, and that is sufficient to answer the motion of a nonsuit.

We are, however, of opinion that there were errors in the charge of the learned trial judge, which require the reversal of this judgment. Substantially at the close of the charge the trial judge said:

"In the absence of contributory negligence on the part of the plaintiff, the defendant is liable for any injury sustained by the plaintiff as a result of the accident under consideration, provided the breaking of the wire can be attributed to the want of reasonable care on the part of the defendant. In the ordinary course of things, a span wire used for the purposes to which the wire in question was applied does not break and fall. It is therefore a reasonable presumption, in the absence of any explanation, that the accident resulted from the want of ordinary care on the part of the defendant. The presumption is not controlling, and it is for you to say whether it has been successfully overcome by the testimony. When the plaintiff rested, the burden was upon the defendant of showing such facts as warrant the conclusion that the accident was due to circumstances which the exercise of ordinary care could not foresee and guard against. Has the defendant met this obligation? If it has, your verdict must be for the defendant."

In the beginning of the charge, the judge had correctly instructed the jury that the burden of proof was on the plaintiff, and possibly, had the matter rested at the close of the extract quoted, we might feel justified in considering the charge as a whole, and construing this portion in connection with what had previously been said. But, after a long discussion between the court and counsel on both sides, the court said:

"On that branch of the case I will read you again, that there may be no mistake, what I consider the law."

The judge then repeated the portion of the charge already quoted. To the three propositions contained in this portion of the charge, the counsel for the appellant duly, severally, excepted; and, of those propositions, two, we think, were clearly erroneous. It was not sufficient,

to render the defendant liable for the injuries sustained by the plaintiff, that the breaking of the wire could be attributed to the want of reasonable care. To render the defendant liable, it was requisite that the plaintiff should establish by a fair preponderance of proof, not only that the breaking of the wire could be attributed to the want of reasonable care, but, as a matter of fact, was actually due to that cause. The second proposition, substantially the rule of res ipsa loquitur, as we have already stated, is correct. The third proposition is:

"When the plaintiff rested, the burden was upon the defendant of showing such facts as warrant the conclusion that the accident was due to circumstances which the exercise of ordinary care could not foresee and guard against. Has the defendant met this obligation? If it has, your verdict must be for the defendant."

If the fair interpretation of this instruction was only that, when the plaintiff rested, the defendant was called upon for explanation, it would not be objectionable; but I do not think it can be considered as so limited. Taken in connection with the preceding proposition, I think its true construction is that the burden of proof was on the defendant. So construed, the charge was plainly erroneous. The burden of proof always remains upon the party who has the affirmative of the issue. From certain facts presumptions may arise. Those presumptions are merely evidence, like other proof in the case. When the case was finally submitted to the jury, weighing presumptions, proofs, and all the evidence, the burden of proof was on the plaintiff to establish affirmatively the negligence of the defendant. Whitlatch v. Casualty Co., 149 N. Y. 45, 43 N. E. 405; Weigley v. Kneeland (Sup.; not yet officially reported) 45 N. Y. Supp. 388. A presumption does not shift the burden of proof. This was the final statement of the court to the jury, and was given to the jury as a proposition or series of propositions complete in themselves, and embracing the whole law on the subject included in them. We therefore think the error is too serious to be overlooked.

The judgment and order appealed from should be reversed, and a new trial granted; costs to abide the event. All concur.