PIEHL v. ALBANY RY.

(Supreme Court, Appellate Division, Third Department.    May 10, 1898.)

1. NEGLIGENCE—EVIDENCE.
    The bursting of a fly wheel purchased from manufacturers, and for two years used on an engine which generated electric power, is not prima facie evidence of negligence.

2. SAME—NUISANCE.
    In an action for the death of plaintiff's intestate, caused by the bursting of the fly wheel attached to an engine used to generate electricity, where plaintiff attempts to show that the maintenance of the wheel was a nuisance, such evidence must in some way relate to the construction or maintenance of the machinery which caused the accident.

3. SAME—EXPERT EVIDENCE.
    Where the general manager of an electric railway had devoted much attention to the operation of such railways, but had not given attention to the liability of fly wheels attached to engines, used to generate the electricity, to burst, an objection to his testifying to the cause thereof is properly sustained.

4. SAME—EVIDENCE.
    In an action for the death of plaintiff's intestate caused by the bursting of a fly wheel attached to the engine, the mere fact that on the day previous to the accident the engineer carried a stick of timber into the engine house, and laid it alongside the engine whose fly wheel exploded, saying that he wished to prop the engine up, is too meager to permit an inference that the accident was caused by defects in the engine.

5. NONSUIT—INFERENCE.
    Where plaintiff is nonsuited she is only entitled to such inferences of fact in her favor as her evidence fairly tends to support.

6. SAME—INFERENCES AGAINST PREVAILING PARTY.
In case of nonsuit, no inferences can be indulged against the prevailing party unless he has been called upon to produce evidence in his possession, and has refused to do so, or the case has assumed such an attitude that his silence may be attributed to fear to speak.

7. NEGLIGENCE—EVIDENCE.
Where plaintiff's intestate was killed by the bursting of a fly wheel attached to an engine in defendant's power house, used for generating electricity, the absence of an electrical engineer is no evidence of negligence, where there is no evidence to show that his presence would have prevented the accident.

8. NEW TRIAL—NEWLY-DISCOVERED EVIDENCE—SUFFICIENCY.
A new trial will not be granted on the ground of newly-discovered evidence, where such evidence is cumulative.

Merwin, J., dissenting.

Appeal from trial term, Albany county.

Action by Maggie Piehl, as administratrix of the estate of John Piehl, deceased, against the Albany Railway. From a nonsuit and a motion denying an order for new trial, plaintiff appeals. Affirmed.

The action was to recover damages, under the statute, on account of the death of plaintiff's intestate, caused, as alleged, by the negligence of the defendant. The defendant operated street railroads in the city of Albany by means of electrical power. It had a power house in the city, where five steam engines were used in the generation of this power. November 12, 1895, the fly wheel, 18 feet in diameter, weighing 50,000 pounds, attached to one of these engines, while in operation, burst, and one of the fragments was thrown across the street into a saloon, and there struck and killed the plaintiff's intestate.

Argued before PARKER, P. J., and LANDON, PUTNAM, and MERWIN, JJ.

Mark Cohn, for appellant.
Lewis Carr, for respondent.

LANDON, J. Upon the former appeal from a judgment in favor of the plaintiff entered upon the verdict of a jury, the single question presented by the record was whether the evidence supported the finding that the bursting of the fly wheel was due to the negligence or incompetency of the defendant's servant in charge of the engine, and we held that it did not. 19 App. Div. 471, 46 N. Y. Supp. 257. Upon the trial now under review the plaintiff was nonsuited at the close of her case. She asked to go to the jury, upon all the facts in the case, upon the questions whether the defendant was negligent, or was maintaining and operating a nuisance, and her request was denied. The question whether the explosion was due to the negligence or incompetency of the defendant's servant in charge is not now urged. The learned counsel for the plaintiff insists (1) that the fact that the fly wheel burst is of itself presumptive evidence of negligence; (2) that its maintenance and operation in the midst of a densely inhabited part of the city was a nuisance; (3) that the evidence tended to show that the engine was out of order at the time of the explosion, and some time prior to it, and that defendant knew it.

The general rule is that proof of an accident is not of itself proof of negligence. There are some exceptions to the rule. Thus, in Hogan v. Railway Co., 149 N. Y. 23, 43 N. E. 403, it is said that,

"if a person erects a building, bridge, or other structure upon a city street or an ordinary highway, he is under a legal obligation to take reasonable care that nothing shall fall into the street and injure persons lawfully there.    This being so, it is further assumed that buildings, bridges, and other structures properly constructed do not ordinarily fall upon the wayfarer.    So, also, if anything falls from them upon a person lawfully passing along the street or highway, the accident is prima facie evidence of negligence,"—citing Mullen v. St. John, 57 N. Y. 567; Volkmar v. Railway Co., 134 N. Y. 418, 31 N. E. 870, and cases there cited.    It is also presumed in favor of a passenger that a well constructed and managed railway train will not leave the track.    Edgerton v. Railroad Co., 39 N. Y. 227; Curtis v. Railroad Co., 18 N. Y. 534; Guldseth v. Carlin, 19 App. Div. 588, 46 N. Y. Supp. 357; Gerlach v. Edelmeyer, 47 N. Y. Super. Ct. 292, affirmed 88 N. Y. 645.    Also, if a passenger is injured by some unusual action or defect in the appliances of conveyance, that the carrier is negligent.    Poulsen v. Railroad Co., 18 App. Div. 221, 45 N. Y. Supp. 941; Gilmore v. Railroad Co., 6 App. Div. 119, 39 N. Y. Supp. 417.    The traveler upon the highway ought to be reasonably free from the infliction by others of injuries by external violence, and hence, where a span wire supporting defendant's trolley wire broke and injured plaintiff, the defendant should be put to an explanation.    Jones v. Railway Co., 18 App. Div. 267, 46 N. Y. Supp. 321; Clarke v. Railroad Co., 9 App. Div. 51, 41 N. Y. Supp. 78; Gall v. Railway Co., (Super. N. Y.) 5 N. Y. Supp. 185; Cole v. Bottling Co., 23 App. Div. 177, 48 N. Y. Supp. 893.    Some injuries are of such a nature that the first thought that occurs to the mind is that nothing but carelessness or willfulness could have produced them.    The law adopts the same idea.    "Res ipsa loquitur."    Stallman v. Steam Co., 17 App. Div. 397, 45 N. Y. Supp. 161.    Sometimes the situation is such as to suggest negligence, and the defendant alone is able, or is presumed to be able, to furnish the facts.    Wintringham v. Hayes, 144 N. Y. 1, 38 N. E. 999; Collins v. Bennett, 46 N. Y. 490.    Now, in all these cases, although the burden rests upon the plaintiff to prove negligence, he does prove it, prima facie, by proving what happened, not what caused it to happen.    This fly wheel burst.    There is no affirmative proof of negligence, other than the explosion.    There is evidence showing the situation of the power house, and a general description of the fly wheel and engine, and of their uses.    The engine, with its fly wheel, was used in generating the electrical power by which the defendant operated its street cars, and had been so used for two years before the explosion.    It was purchased from the manufacturers.    In such case the authorities are to the effect that the mere fact of the explosion is not prima facie evidence of negligence.    Losee v. Buchanan, 51 N. Y. 476; Cosulich v. Oil Co., 122 N. Y. 118, 25 N. E. 259; Reiss v. Steam Co., 128 N. Y. 103, 28 N. E. 24.    Why distinguish this class of cases from the others?    The better question is, why make it an exception to the general rule?    I assume it is not excepted, because such are the limitations upon human foresight that every reasonable care does not always prevent accidents, and that such is the nature of steam and electricity, and of the engines

by or upon which they operate, that, when such an explosion as this occurs, our experience, or even expert experience, is not sufficiently uniform to justify us in presuming that negligence is the cause.   The explosion does not, in fact, speak for itself and tell us its cause.   To punish the defendant because it cannot explain the cause of the explosion is not to punish it because it has done wrong, but may be because it does not know what we wish to find out.

2. The evidence given, and that which was offered and excluded, did not tend to show that the operation of this engine and fly wheel alone, or in connection with all the other operations within the power house, constituted a nuisance.   It is quite possible that the noise of the works, the vibrations they caused, and the occasional flashing of electricity, may have been an annoyance to the next-door neighbors.   But none nor all of these things killed plaintiff's intestate, and therefore defendant did not thereby wrongfully cause his death. He was killed by the bursting of the fly wheel.   If it was unlawful to operate the engine and machinery in connection with such a fly wheel, then the intestate's death resulted from the unlawful act of defendant.   But evidence of noise, vibrations, and flashing of electricity did not tend to show that the fly wheel was in danger of bursting.   Its bursting was a single, unusual, and exceptional circumstance.   The unexpected happened.   When a powder magazine in a thickly inhabited locality explodes, the expected does happen.   Heeg v. Licht, 80 N. Y. 579.   The plaintiff called the general manager of the defendant, and asked him, "Are the fly wheels liable to explode notwithstanding the greatest exercise of care?" He answered that he did not consider himself entirely competent to answer the question.  ·He was then examined at length as to his competency, from which it appeared that, while he had devoted much attention to the operation of electric railroads, he had not given attention to the liability of fly wheels to explode.   The court sustained the objection to his testimony, upon the ground of his incompetency.   We do not think this was error.   The plaintiff proved that, the day before the explosion, a person supposed to be defendant's engineer, though not shown to be, had a long and large stick of timber carried into the power house, and laid alongside the engine whose fly wheel exploded; saying that he wished to prop the engine up.   This is all.   From this the plaintiff asked to have the jury infer that the engine needed propping up, and hence was defective, and hence the explosion.   The evidence is too meager to permit such inferences.   Whether the engine needed propping up, and, if·so, whether because defective, or to be made more convenient, or whether it was propped up or not, or how this circumstance bore upon the subsequent explosion, was left purely conjectural.   The plaintiff cites Wylde v. Railroad Co., 53 N. Y. 157, to the effect that, the defendant knowing the truth and omitting to speak, every inference warranted by the evidence should be indulged against him. But the plaintiff, having been nonsuited at the close of her case, is only entitled to such inferences of fact in her favor as her evidence fairly tends to support.   Further inferences cannot be indulged against the defendant, unless, as in the case cited, it has

been expressly called upon to produce evidence in its possession, and has refused to do so, or the case has assumed such an attitude that defendant's silence may be attributed to its fear to speak.

The judgment should be affirmed.   All concur, except MERWIN, J., dissenting.

Judgment affirmed, with costs.

LANDON, J.   The plaintiff also appeals from an order denying a motion for a new trial upon the ground of newly-discovered evidence.   The motion is based upon affidavits and upon the records on the first and second appeals.   The plaintiff now wishes to try the case again upon the theory of the first trial, and she claims that by the newly-discovered evidence she can prove that the defendant was guilty of negligence in two respects—First, Herlihy, the steam engineer in charge, was incompetent; second, that the defendant should always have an electrical engineer on duty in the power house, and there was none on duty when the explosion occurred.   Passing the objection that the newly-discovered evidence relates to the first trial, and not to the second; that the plaintiff awaits the issue of the second trial before she is spurred to diligence in respect to making a better case upon her original theory,—we will examine the motion with the view of determining whether with the newly-discovered testimony it is probable that a different result would be reached.   By reference to the report (19 App. Div. 471, 46 N. Y. Supp. 257), the following discussion will be clearer.   Upon the first trial the case turned upon the difference in the order in which the witness Herlihy, the engineer in charge at the time of the explosion, stated that he did two things,—whether he pulled the circuit breaker "after" he noticed that engine No. 1 was "running away" or "before" he noticed it.   He said, or was understood to mean, "after" upon his direct examination, and "before" upon his cross-examination.   It was contended that if he pulled the circuit breaker after he noticed that the engine was running away he did wrong, and that his act was evidence of his negligence or incompetency.   We did not concur in that view, for reasons stated in our former opinion.   Herlihy's idea was that by throwing out the circuit breaker, and waiting a little while, and throwing it back, he could equalize the disparity in the load the engines were carrying, and thus arrest the violent sparking at the generator of engine No. 1, which was the first trouble that attracted his attention.   The new testimony offered is to the effect that throwing out the circuit breaker and throwing it back again would not equalize the loads the engines were carrying, and hence the argument that Herlihy was incompetent or negligent is supported. It is not denied that it would stop the trouble of sparking at the generator of No. 1.   Besides, Herlihy did not wait to turn back the circuit breaker.   Whether he pulled it after he noticed the engine was running away, or before he noticed it; in either case he hastened to engine No. 1, and pulled the throttle, without tarrying at the circuit breaker.   He certainly noticed the trouble with the generator before he noticed that with the engine, and he attended

first to the first trouble he saw. The newly-discovered evidence is to the effect that when he noticed the trouble with the engine he should have instantly hastened to remedy it. He did so, for it is not claimed that pulling the circuit breaker required more than a single movement of the hand. The evidence now offered in this respect is, at best, cumulative, and it is largely based upon the idea that pulling the circuit breaker and throwing it back was a useless and harmful proceeding, so far as engine No. 1 was concerned. But it seems that it will always remain true that the circuit breaker was adjusted to break automatically at 900 amperes, and the governor of the engine to shut off steam automatically within the limit of safety, and in both cases Herlihy, because of the two troubles he saw, did not judge it wise to await the automatic action of either circuit breaker or engine.

But the testimony of a witness is now offered to the effect that after the explosion he saw a Mr. Parr turn the valve of an engine, —which engine he does not know,—and hence it is to be argued that Herlihy did not pull the throttle. This newly-discovered testimony is too vague. Witnesses will testify that if Herlihy had pulled the throttle the fly wheel would not have burst. This idea was advanced upon the first trial. How expert the witnesses are upon this point is not clear. How it would be if the bursting was progressive,—that is, if a crack had begun to develop in the rim before the throttle was pulled,—the witnesses do not say. An expert witness, who was examined at length upon the first trial, now says that an electrical engineer ought always to be present in the power house, and that he had told the superintendent so. None was present at the time of the explosion. That is very probable, but the difficulty here, so far as the evidence points to it, was with the steam engine. Its governor failed in its function. We are not told how the presence of an electrical engineer would have saved the fly wheel, and we need to know to a reasonable probability before we can say that this injury came about through his absence. It does not seem to us that the newly-discovered evidence materially improves the plaintiff's case. It is cumulative in opinions as to whether Herlihy's action as plaintiff assumes it was right, but adds nothing material to the facts upon which the inference as to his negligence or incompetency should rest, and no new material fact as to the negligence of the defendant.

Order affirmed, with costs and disbursements. All concur.

Order affirmed, with $10 costs.