## LUDWIG v. METROPOLITAN ST. RY. CO.

(Supreme Court, Appellate Division, First Department.   April 11, 1902.)

1. STREET RAILROADS—ACTION FOR INJURIES—FAILURE TO PRODUCE EVIDENCE—INFERENCES.

In an action against a street railway company for injuries alleged to have been caused by an electric shock from the slot rail of defendant's underground-trolley railway track, wherein it appeared that defendant had appliances from which it could detect any escape of electricity from the conductor rails to the slot rail, and defendant introduced its track master, chief engineer, and electrical engineer to show that there was no leak at the time of the accident, but failed to produce those in direct charge of the detecting appliances, every inference warranted by the evidence should be indulged against defendant, because, presumably having evidence in its possession, it omitted to produce it or to explain the omission.

2. SAME—UNDERGROUND TROLLEY—SHOCK FROM SLOT RAIL—RES IPSA LOQUITUR.

Where a pedestrian is injured by a shock of electricity received from the slot rail of an underground-trolley street railway track, the doctrine of res ipsa loquitur applies, so as to raise a presumption of negligence sufficient to call for an explanation from the company, or to put it to its proof.

8. SAME—INSTRUCTIONS—IMPROPER ASSUMPTION OF FACTS—DUE CARE.

Plaintiff claimed to have been injured, just after a snowstorm, by an electric shock from the slot rail on defendant's underground-trolley street railway track. There was evidence that electricity could escape from the conductor rails if excessive snow or moisture settled in the conductor conduit, or by defective insulation. There was also evidence that defendant's road was constructed properly. *Held*, that an instruction assuming the proper construction of the road, and that there was no evidence that electricity could escape except in consequence of the snowstorm, and charging that, if the snowstorm was the cause of plaintiff's injury, he could not recover, was properly refused, as improperly assuming that the electricity could not escape except through snow, and as omitting defendant's duty to use due care to remove the snow.

4. SAME—INSTRUCTIONS—FAILURE TO INSTRUCT.

Refusal to give instructions whose subject-matter is fully covered by other instructions is not error where the requests therefor are not read before the jury, but are given to the court in writing, and it merely fails to give the instructions requested.

5. SAME—FAILURE TO INSTRUCT—SUFFICIENCY OF INSTRUCTIONS.

Plaintiff claimed to have been injured, just after a snowstorm, by an electric shock from defendant's underground-trolley railway track, while defendant denied this, and claimed plaintiff merely slipped and fell. The court instructed that, if the jury believed defendant had exercised ordinary care to prevent the escape of electricity, or that it was impossible for the slot rail to become charged therewith, or that defendant had sufficiently explained the accident, or that it was unavoidable by ordinary care, they must find for defendant; but that, if they should find that plaintiff was free from contributory negligence, that the accident was due to an electric shock, and not inevitable, but could have been prevented by ordinary care, and that defendant was guilty of negligence, they should find for plaintiff; that the burden of proof was on plaintiff to show by a fair preponderance of the evidence that his injuries were caused by some negligence of defendant, and that, if the evidence was as consistent with the absence of such negligence as with it, plaintiff could not recover, as he was "bound to make it more than a balanced case"; and that plaintiff could not recover "without affirmative proof that defendant did not exercise ordinary care in the construction, operation," etc., of its road. *Held*, that the instructions were sufficient to

justify a failure to instruct specifically that plaintiff must establish his case by a preponderance of evidence, and that the mere happening of the accident was not sufficient to justify a recovery.

**6. SAME—RES IPSA LOQUITUR—OVERCOMING PRESUMPTION—SUFFICIENCY OF EVIDENCE.**

Plaintiff was injured, just after a snowstorm, by an electric shock from the slot rail of defendant's underground-trolley railway track. There was evidence to show that the slot rail could have become charged from the conductor rail in only two ways, viz., defective insulation, or by snow or excessive moisture in the conductor conduit; and defendant showed by expert testimony that its road was properly constructed, and by its employés that it had exercised care in removing the snow and other substances from the conduit, which evidence was uncontradicted except by the circumstances of the accident. Defendant also introduced employés to show that the ground-leak indicators at the power house showed no leak at the time in question, but no one in direct charge of these indicators was introduced. *Held*, that the question whether defendant's evidence sufficiently overcame the presumption of negligence raised by the fact of the injury by electricity was for the jury.

**7. SAME—LIABILITY FOR DEFECTIVE TRACK—DUTY TO REPAIR.**

Where the insulator of the conductor rails of an underground-trolley railway gets out of repair, or the conductor conduit becomes filled with snow or moisture, so as to charge the slot rail with electricity, without any negligence on the part of the railway company, it is not liable for injuries to pedestrians, caused by such conditions, unless it fails to remedy the defects within a reasonable time after actual or constructive notice thereof.

**8. SAME—ELECTRIC SHOCK FROM SLOT RAIL—EXPERT TESTIMONY.**

Where the plaintiff claimed to have been injured by an electric shock from the slot rail of defendant's underground-trolley railway track, the testimony of an experienced electrical engineer, who knew the effect of electricity upon the human body, and was thoroughly conversant with the subject, was admissible to show that, if the slot rail was charged with electricity, and plaintiff stepped upon it under the conditions existing at the time of the accident, he would receive an electric shock.

Van Brunt, P. J., and McLaughlin, J., dissenting.

Appeal from trial term, New York county.

Action by Louis Ludwig against the Metropolitan Street Railway Company. From a judgment in favor of plaintiff, defendant appeals. Affirmed.

Argued before VAN BRUNT, P. J., and McLAUGHLIN, PATTERSON, O'BRIEN, and LAUGHLIN, JJ.

Charles F. Brown, for appellant.
Joseph G. Williamson, for respondent.

LAUGHLIN, J. This action is brought to recover damages for personal injuries alleged to have been sustained by plaintiff through defendant's negligence. Upon the trial, plaintiff gave evidence tending to show that as he was walking across 2d avenue on the southerly crosswalk of 116th street toward the west, at about 7 o'clock in the evening on Sunday, the 12th day of February, 1898, he stepped with his right foot upon the slot rail between the rails of the northbound track of the defendant's road, and received a shock of electricity in his foot and leg, which precipitated him to the ground,

whereby he sustained a fracture of both bones of his right leg below the knee in the region known as the "lower third." There had been quite a severe snowstorm since 9 o'clock in the evening before, the snow falling at intervals all day, about five inches having fallen altogether. The average temperature on the 12th was 4° below zero. Plaintiff's shoes were wet, and he had no rubbers on. He testified that before stepping on the track he waited for a north-bound car to pass, and that he observed a flame or flashes of electricity from the slot under the car, or following a few feet behind it, as it passed over the crosswalk and up into the block beyond. The opening between the slot rails, which are even with the surface of the street, is from three-quarters of an inch to an inch in width. Below the slot rails is a cement conduit, elliptical in form, about 18 inches deep and from 13 to 16 inches wide. The conduit is in part formed of iron yokes set 5 feet apart, which support the tram rails and slot rails. In this conduit, and from 9 to 13½ inches below the surface of the slot rails, there are suspended two conductor rails, one upon either side, and about 3 inches from a perpendicular to the center of the slot. These conductor rails are supported by porcelain insulators carried in cast-iron caps, which are bolted to the slot rails. A steel plow projects from the car through the slot, and forms a sliding contact with the conductor rails, and thus transmits the electric current to and from the motor in the car. The electric current is supplied to the conductor rails in separate sections, fed separately from the power house. In the defendant's power house, situated at 146th street and 7th avenue, it had devices known as "ground detectors," for the purpose of indicating a ground or leak of electricity from the conductor rails; and these ground detectors and other appliances enable the defendant to promptly discover the section in which the leak occurs. The defendant also had appliances by which, upon discovering a ground or leak on any particular section, the current on that section could be immediately entirely cut off. An expert called by the plaintiff testified that the defendant's underground-trolley road was constructed in 1897 or 1898 by the very best methods in vogue, and that these were the approved appliances in use for such purposes. It appeared from his evidence that the slot rails might become charged with electricity if the insulation between them and the conductor rails was imperfect, or if sufficient snow was in the conduit so as to form a contact between the slot rails and the conductor rails, or if an excessive amount of rain or moisture settled on the conductor rails and got into the insulators; but in no other way. There is a device known as a "conduit plow" or "scraper," for removing snow or mud from the conduit. In the bottom of the conduit there are cleaning pits at intervals of 200 feet. The scraper or plow is on the end of an iron shank which passes through the slot, and may be attached to a car. It scrapes the mud or snow into the cleaning pits, from which it is removed by hand. The defendant had two of these scrapers or plows on the line, operated by horses. Evidence was introduced in its behalf tending to show that when this snowstorm set in its snow sweepers were brought into use, and also these conduit plows or scrapers, and kept on the line throughout the storm. The evidence showed

that this line was about six miles in length, and that these scrapers or plows would make a round trip over it in about an hour and ten minutes, and could go as fast as the passenger cars. The track master, chief engineer, and electrical engineer of the defendant testified that they received no notice of any ground or leak at that time, but no one in direct charge of defendant's appliances at the power house for indicating a leak was called to give testimony as to whether or not any leak was indicated, or record made thereof. In these circumstances, every inference warranted by the evidence would be indulged in against the defendant, which, presumably, having the evidence in its possession, omits to produce the same or explain the omission. Wylde v. Railroad Co., 53 N. Y. 156; In re Randal, 158 N. Y. 216, 52 N. E. 1106. There was a sharp question for the determination of the jury as to whether the plaintiff's injuries were sustained in consequence of an electrical shock or by his slipping upon the rail. The court fairly submitted this question to the jury, and in the charge in chief instructed them that the burden of proof was on the plaintiff of showing that his injuries were caused by an electric shock. The doctrine of res ipsa loquitur, we think, properly applies to this case, and the trial court properly instructed the jury that, if the injuries were received through an electric shock from electricity escaping from the defendant's rail, negligence on its part would be presumed "to such a degree as called upon the defendant for an explanation or put it to its proof." Clarke v. Railroad Co., 9 App. Div. 51, 41 N. Y. Supp. 78.

Three exceptions are specially urged upon this appeal as constituting reversible error. They were taken to the refusal of the court to charge three requests presented by counsel for the defendant. The record indicates that these requests were not read to the jury. They appear to have been merely handed up to the court, and, the court having failed to instruct the jury as requested, exceptions were taken to the refusal of the court to charge the requests, which were referred to by numbers. The first request recited the plaintiff's claim as alleged in the complaint, and requested an instruction that the plaintiff was bound to prove the allegations of his complaint by a preponderance of evidence; otherwise, that he could not recover. The thirteenth recited the conceded proper construction of the road, and that there was no evidence that the electric current could escape except as a consequence of the snowstorm, and requested an instruction that, "if the jury find that the snowstorm was in fact the cause of the plaintiff's injury, the defendant is not responsible for that, and the jury must render a verdict in favor of the defendant." The seventeenth was as follows: "The mere fact that an accident happened, and that plaintiff was injured, is not sufficient to justify a recovery by the plaintiff, but the plaintiff must prove that he was injured by reason of some negligent act or breach of duty on the part of the defendant."

The thirteenth request was properly refused. It erroneously assumed that there was no evidence that the electric current could escape except in consequence of the snowstorm; and it likewise erroneously assumed that the defendant would not be liable if the

escape of the electric current was caused by the snowstorm, regardless of whether the defendant exercised care to remove the snow. The first and seventeenth requests were proper, and the only ground upon which the refusal of the court to charge as therein requested can be justified is that these requests had already been fairly charged in substance. As has been seen, these requests were not read aloud. Therefore the jury could not have obtained an erroneous impression from the failure of the court to grant them. Furthermore, I think the learned trial justice fairly, fully, and impartially instructed the jury upon the subject. The court instructed the jury that the defendant's duty was to exercise ordinary care, which is that care that an ordinarily prudent person would exercise under like circumstances, in view of all the circumstances requiring the exercise of watchful care and prudence to prevent the escape of the electric current. The learned trial justice stated to the jury that the plaintiff's claim was that the escape of electricity was due to the failure of the defendant to clear its slot rails of snow or other substances producing moisture, and then drew their attention to the testimony introduced by the defendant tending to show that it had exercised · care in removing the snow and other substances that might be in the conduit, and said to them: "If you believe such testimony, it will be your duty to render a verdict for the defendant. No evidence to the contrary of the defendant's witnesses as to the cleaning of the tracks and of the slot rails has been given, except such as might be inferred from the accident in question." Evidence was given on the part of the defendant tending to show that it would be impossible for the slot rails to become charged with electricity, and the court instructed the jury that, if they believed this evidence, it would be their duty to render a verdict in favor of the defendant. The jury were also instructed that if the defendant had given a sufficient explanation of the accident, or if the accident was unavoidable, and could not have been prevented or guarded against by the exercise of ordinary care and prudence, they should render a verdict in favor of the defendant. The court also charged that if the jury should find from all the facts and circumstances that the plaintiff was free from contributory negligence; that the accident was due to an electric shock, and not to a fall in consequence of the slippery condition of the sidewalk; that the accident was not inevitable, but one that could have been prevented or guarded against by the exercise of ordinary care and prudence, and that the defendant was guilty of negligence,—then they should render a verdict in favor of the plaintiff. At the close of the charge the court again, at the request of plaintiff's counsel, instructed the jury that, if the slot rails were alive with electricity, and the defendant, by the exercise of ordinary care, could have discovered and remedied it, the defendant was liable, provided the plaintiff received a shock of electricity which caused his injuries. The court, both at the request of defendant and at the request of plaintiff, charged that the burden of proof rested on the plaintiff, and that, unless he established by a fair preponderance of evidence satisfactory to the jury that his injuries were caused by some negligence on the part of the defendant,

he was not entitled to recover. The court again, at the request of defendant, instructed the jury that, if the evidence was as consistent with the absence of negligence on the part of the defendant as with its negligence, then the plaintiff could not recover, because the plaintiff was "bound to make it more than a balanced case." The court further instructed the jury at the request of the defendant that, there being no contractual relations between the plaintiff and defendant, the former could not recover "without affirmative proof that the defendant did not exercise ordinary care in the construction, management, and operation of its railroad on the occasion in question."

It is difficult to see how, in view of the charge delivered by the court, the jury could have entertained the belief that the mere happening of the accident and injury to the plaintiff was sufficient to justify a recovery, or that the burden of proof was not upon the plaintiff to establish the negligence alleged by a fair preponderance of evidence. The appellant contends that it has overcome the presumption of negligence on its part raised by the doctrine of res ipsa loquitur. It did not sufficiently overcome the presumption as matter of law. The question was still for the jury to weigh the evidence introduced on the part of the defendant, in the light of the legal presumption of negligence arising from the happening of the accident, and determine from the whole whether the plaintiff had sustained the burden of proof which rested upon him of establishing that his injuries were caused through the negligence of the defendant. O'Flaherty v. Railroad Co., 34 App. Div. 74, 54 N. Y. Supp. 96, affirmed 165 N. Y. 624, 59 N. E. 1128; Kennedy v. McAllaster, 31 App. Div. 453, 52 N. Y. Supp. 714; Kay v. Railway Co., 29 App. Div. 466, 51 N. Y. Supp. 724; Clarke v. Railroad Co., 9 App. Div. 51, 41 N. Y. Supp. 78; Jones v. Railway Co., 18 App. Div. 267, 46 N. Y. Supp. 321; Kister v. Railway Co., 40 App. Div. 441, 58 N. Y. Supp. 132; Volkmar v. Railway Co., 134 N. Y. 418, 31 N. E. 870, 30 Am. St. Rep. 678. Of course, if the defendant exercised proper care, and, without negligence on its part, the insulators got out of repair, or the electric current escaped owing to snow or moisture, it would not be liable, unless it failed to remedy the defect within a reasonable time after actual or constructive notice thereof. Caspar v. Railroad Co., 56 App. Div. 372, 67 N. Y. Supp. 805. In this case, however, the presumption of negligence was not so clearly or satisfactorily met as to warrant or require that the case be taken from the jury. Furthermore, the evidence tending to overcome the presumption of negligence was given by defendant's employés, whose credibility was for the jury. Volkmar v. Railway Co., supra; Eastland v. Clarke, 165 N. Y. 420, 430, 59 N. E. 202; O'Flaherty v. Railway Co., supra.

The only other error assigned by appellant is the admission of expert testimony of the fact that, if the slot rail was charged with electricity, and plaintiff stepped upon it under the conditions existing at the time, which were recited in the hypothetical question, he would receive an electric shock. The witness was an electrical engineer, had had a large experience, knew the effect of electricity upon the

human body, and was thoroughly conversant with the subject. We think the evidence was competent.

The verdict is reasonable in amount, and the judgment and order should be affirmed, with costs.

PATTERSON and O'BRIEN, JJ., concur.

McLAUGHLIN, J. (dissenting). I dissent. I think the court erred in refusing to charge the defendant's seventeenth request, which was as follows: "The mere fact that an accident happened, and that plaintiff was injured, is not sufficient to justify a recovery by the plaintiff, but the plaintiff must prove that he was injured by reason of some negligent act or breach of duty on the part of the defendant." It is conceded in the prevailing opinion that this request was proper, and that the refusal to charge as requested would have been erroneous, and necessitate a reversal of the judgment, were it not for the fact that it had, in substance, already been charged. I am unable, after a careful consideration of the charge as made, to discover where the court charged the proposition requested, even in substance. In the main charge the court, after stating that the burden was upon the plaintiff of proving that he fell by an electric shock, then qualified such instruction by saying, if the jury found that the fall "was due to the electric shock, all that is necessary, under such circumstances, for the plaintiff to do, is to prove the injury, and negligence on the part of the defendant will be presumed to such a degree as to call upon the defendant for an explanation and put it to its proof." This was equivalent to saying, if the jury believed the plaintiff's testimony to the effect that his fall was caused by a shock of electricity, then the negligence of the defendant necessarily followed as a legal conclusion; in other words, if the plaintiff's fall was caused by an electric shock, that then the burden was upon the defendant to prove its freedom from negligence. Nowhere did the court instruct the jury, so far as I am able to discover, that upon the question of defendant's negligence, even though plaintiff's fall was caused by a shock of electricity, the burden of proof was nevertheless upon the plaintiff. Defendant was entitled to have the jury so instructed. Kay v. Railway Co., 163 N. Y. 447, 57 N. E. 751; Jones v. Railway Co., 18 App. Div. 267, 46 N. Y. Supp. 321.

I am of the opinion, therefore, that the judgment should be reversed and a new trial ordered.

VAN BRUNT, P. J., concurs.