HELEN McKITTRICK AND JOHN McKITTRICK, RESPOND-
ENTS, v. PUBLIC SERVICE RAILWAY COMPANY, AP-
PELLANT.

Submitted November 6, 1924—Decided March 18, 1925.

Plaintiff was a passenger on the defendant's trolley car, and testified
that when she started to get off the car, put her foot on the step
and took hold of the handle, an electric shock went through her,
throwing her back towards the car. A motion for a nonsuit and
for a direction, of a verdict for the defendant was refused by the
trial court, and plaintiff had a verdict. On appeal, defendant
contended that there was no electric shock suffered by the plain-
tiff, and, if there was, it could not be held for negligence, be-
cause the car was both constructed and maintained with all the
care reasonably required in view of possible danger from elec-
tricity. *Held*, that the alternative was between acceptance of
plaintiff's claim that she was injured by an electric shock, from
which an inference of negligence could be drawn, and acceptance
of defendant's contention, and whether an inference of negligence
should be drawn, and, if drawn, whether it was satisfactorily met
by defendant's evidence, was for the jury to decide.

On defendant's appeal from the Hudson County Circuit
Court.

Before GUMMERE, CHIEF JUSTICE, and Justices PARKER
and KATZENBACH.

For the respondents, *Robert H. Doherty.*

For the appellant, *Leonard J. Tynan.*

The opinion of the court was delivered by

PARKER, J. This is a suit by a married woman, her hus-
band joining *per quod,* for damages because of personal in-
juries alleged to have been sustained by a shock from a
current of electricity on the defendant's trolley car. The
complaint alleges that the female plaintiff was a passenger
for hire in said car; that said car had stopped at a street

corner for the purpose of allowing her to alight therefrom; that while she was about to alight from said car, and after she had placed her left foot down upon the step from the front platform of said car, she was severely shocked by the said dangerous and deadly currents of electricity by reason of the failure of the said defendant to properly insulate the wires used for carrying said dangerous and deadly currents of electricity which were carried to the step of said car. The plaintiff had a verdict and judgment and the defendant has appealed. The grounds of appeal are—*first,* that the court reopened the case for the purpose of allowing certain testimony to be introduced contrary to a stipulation; *secondly,* that the court refused to nonsuit the plaintiff on the ground that the evidence produced by said plaintiffs failed to disclose any negligence of the defendant, and *third,* that the court, at the close of the whole case, refused to direct the jury to return a verdict in favor of the defendant on a similar ground, viz., that the whole case failed to disclose any negligence of the defendant company.

The case is submitted on briefs, and is argued in the brief for the appellant very much as though this was a rule to show cause instead of an appeal. Some twenty pages of the brief are devoted to extracts from the testimony mainly directed toward showing that Mrs. McKittrick's story on the witness-stand, with respect to how she sustained her injury, was incredible. Speaking of the case of *Trenton Passenger Railway Co.* v. *Cooper,* 60 *N. J. L.* 219, relating to the doctrine of *res ipsa loquitur* in cases where electricity is allowed to escape, the brief proceeds as follows:

"We have no quarrel with that doctrine, but our claim is that, taking the plaintiff's case alone, it appears more probable that her trouble arose from turning her foot and spraining her ankle when alighting from this standing car, than that any electric shock occurred."

Manifestly, the resolution of these conflicting probabilities was for the jury. In disposing of the points that the court erred in denying a nonsuit and in denying a motion to direct, it is sufficient, so far as the testimony is concerned, to cull

from that of the female plaintiff the following: That when she started to get off the car to put her foot down on the step and took hold of the handle, an electric shock went right through her. Asked to tell what she felt, she said: "All pins and needles went through me and I got faint, and then everything got black before me for a minute. * * * I could feel this right hand and it felt in my side; I just went toward the inner part of the car—toward the back of the car. I was knocked toward the back of the car." She testified that her daughter had rubbers on, but that she herself did not. Later in the case, after she was recalled to the stand over the objection of the defendant, she testified that there was no scars on her body as a result of the accident. "*Q.* How long did this pins and needles or tingling sensation last? *A.* Well, when my hand fell to my side it was very shortly after that, just as my hand fell to my side. Just a second or so. *Q.* Where did you feel this tingling sensation? *A.* Through my body, I could not just tell you where, it went right through me when I put my left foot down, then everything got black before me." When challenged as to her knowledge whether it was an electric shock or not, she testified that she had experienced the effect of electricity before in using batteries for rheumatism, &c., and that the sensation of pins and needles was the same, except that at the time of the accident it was very much more severe.

Counsel for the appellant cite no reported case in this state, and we believe there is none. However, they found a *per curiam* of this court in the case of Clark *v.* Pennsylvania Railroad Co., decided in February, 1913, but unreported, in which the plaintiff was riding in one of the Hudson tube cars, and the question in that case was whether he had received an electric shock or had been attacked by Jacksonian epilepsy, to which it was claimed he was subject. This court set aside a verdict for the plaintiff and ordered a new trial, intimating that defendants were entitled to a direction of a verdict under the circumstances of the case. The case went back for a retrial, and the trial judge directed a verdict for the defendant, which was taken by the plaintiff to the Court

of Errors and Appeals, and there affirmed, because the plain-tiff had not excepted to the direction. 89 *N. J. L.* 708. We have given the present case careful consideration, and do not think that we are controlled by the Supreme Court *per curiam* on a somewhat different state of facts. We think there was evidence in the case from which a jury could legiti-mately find that the plaintiff received an electric shock; secondly, that an inference of negligence arises from the fact, and thirdly, that such inference having arisen, it was not conclusively met by the evidence, so that the court was enti-tled to withdraw the case from the jury. There are satisfac-tory precedents for so holding. In the case of *Wallers* v. *Syracuse Railway Co.,* 178 *N. Y.* 50; 70 *N. E. Rep.* 98, plaintiff made a similar claim, and its impossibility was urged. The court said:

"We are not able to understand how such an occurrence could have happened, but this court is not the judge of the credibility of testimony. We have frequently had occasion, in cases of accidents upon electric railways, to try and fathom some of the unaccountable freaks of electricity. We know that there are many things concerning its action that are im-perfectly understood. What it does or may do under a given state of circumstances is, perhaps, not yet accurately known. It may be that the plaintiff's claim that he felt a shock of electricity when the wire coiled about his body was purely imaginary, but if he tells the truth as to what followed, and the effect which the accident had upon him, there can be no doubt that in some way and from some cause he sustained bodily injuries. What the extent of those injuries was, and whether they were real, or in some degree feigned, was a question for the jury."

In *Denver Tramway Co.* v. *Reid,* 35 *Pac. Rep. (Col.)* 269, plaintiff claimed to have been injured by electric current on a trailer of an electric street car; two expert electricians tes-tified "that the cars were so coupled, constructed and insu-lated that it, in their opinion, would be impossible for the trail car to become so charged with electricity as to cause injury to any person coming in contact with any part of it.

'However expert, scientific and learned they may have been upon the subject,' said the court, 'and however honest, what they, or either of them, thought in regard to it, was of very little importance when confronted with the facts and result established and uncontradicted.' "

Cases are not infrequent where the electric current seems to have rejected the shortest and easiest route. Instances are *Trenton Passenger Railway Co.* v. *Cooper,* 60 *N. J. L.* 219, where a horse was shocked by stepping on a trolley rail. *Clark* v. *Nassau Electric Railway Co.,* 41 *N. Y. Supp.* 78, a similar accident, in which the driver also received a shock in aiding the fallen horse. *Wood* v. *Wilmington City Railway Co.* (*Del.*), 64 *Atl. Rep.* 246. We do not think that the court was entitled to say, in view of the expert testimony of defendant's witnesses, that plaintiff's evidence that she sustained an electric shock was of no legal value.

Granted that plaintiff sustained an electric shock, the thing itself spoke of defendant's negligence. A trolley car, operated by defendant by powerful electric current, is *per se* dangerous when allowed to escape. Authorities on this point are countless. It is sufficient to cite the cases in this state of *Bahr* v. *Lombard, Ayres & Co.,* 53 *N. J. L.* 233; *Trenton Passenger Railway Co.* v. *Cooper,* 60 *Id.* 219; *Hughes* v. *Atlantic City Railroad Co.,* 85 *Id.* 212.

The jury being entitled to draw an inference of negligence, it was for the defendant to rebut or explain. The burden of proof remained with the plaintiff. *Hughes* v. *Atlantic City Railroad Co., supra.* If the explanation leaves the case with no disputed fact, a verdict may be directed. *McCormack* v. *Standard Oil Co.,* 60 *N. J. L.* 243. But if the testimony presents disputed material facts, or if reasonably divergent inferences may be drawn by fair-minded men from material facts which are not in dispute, then it is for the jury, not for the court, to settle the conflict and draw the inference. *Wilkins* v. *Standard Oil Co.,* 78 *Id.* 524; *Goodman* v. *Lehigh Valley Railroad Co., Id.* 317; 82 *Id.* 450. Mere weight of evidence is not the criterion. *Uvalde Paving Co.* v. *Central Stock Yard Co.,* 84 *Id.* 297. In the case at bar the alterna-

tive was between the acceptance of plaintiff's evidence that she was injured by an electric shock and the inference of negligence that could be drawn therefrom, and the acceptance of defendant's claims—(a) that it was not an electric shock; (b) if a shock, defendants should not be held for negligence, because they had both constructed and maintained their car with all care reasonably required of them in view of the possible dangers from electricity. Whether an inference of negligence should be drawn, and, if drawn, whether it was satisfactorily met by defendant's evidence, was for the jury to say.

This disposes of everything in the appeal except the claim that the court erred in allowing further testimony to be introduced. The situation was this: Plaintiff was ready to rest with the exception of a medical witness, and there was a stipulation that, if a nonsuit were denied, that witness could be called later. On the motion to nonsuit the court was manifestly impressed with a lack of knowledge of electricity by the plaintiff, and allowed her to be recalled, as we have already seen, to show that she knew of an electric shock because of previous experience.

The complaint is that this was a breach of the stipulation, but we do not think the stipulation was breached as placed on record. It reads as follows:

"It is stipulated, in view of the motion for a nonsuit, that if the nonsuit is denied the plaintiff may have the right of calling Doctor Flaherty later on as a witness."

This, however, has nothing to do with the discretionary power of the court to permit a reopening of the case for the purpose of allowing the plaintiff to add something that had been overlooked, and it would have been manifestly unjust to order a nonsuit because of the inadvertent omission of a few simple questions.

The judgment will be affirmed.