George C. D'Arcy, Appellant, v. Westchester Electric Railway Company, Respondent.

*Negligence — injury to a passenger on an electric car from a shock received through a brass rod used to protect the car window —* res ipsa loquitur.

Where, in an action to recover damages for personal injuries, it appears that the plaintiff was a passenger upon one of the defendant's electric cars and that, while standing on the rear platform thereof, grasping a brass rod which had been placed across a window for its protection, he received a shock of electricity which was so violent as to cause him to lose his grasp of the rod and be thrown from the car, the doctrine of *res ipsa loquitur* applies and, if the occurrence is not explained by the defendant, the plaintiff is entitled to have his case submitted to the jury, although he may have been unsuccessful in an effort to prove that the electric shock was due to the defective insulation of the car.
McLaughlin, J., dissented.

Appeal by the plaintiff, George C. D'Arcy, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of New York on the 15th day of July, 1902, upon the dismissal of the complaint by direction of the court after a trial at the New York Trial Term.

*W. C. Beecher*, for the appellant.

*Arthur Ofner*, for the respondent.

PATTERSON, J.:

The plaintiff appeals from a judgment dismissing the complaint in an action brought to recover damages for injuries alleged to have been sustained by him through the negligence of the defendant. He was a passenger on a car of the defendant operated by an overhead trolley wire. It was a closed car and the plaintiff was standing on the rear platform. The car was moving south from Mt. Vernon to West Farms. Plaintiff was standing on the left side of the platform, he facing the north, with his left hand behind him grasping a brass rod which was placed across a window for its protection. While thus standing, according to his testimony, he received a shock of electricity which was so violent as to cause him to lose his grasp of the rod and he was thrown toward the back of the car and fell into what is called a ditch on the side of the defendant's road and sustained injuries. He testified that at the time he received the shock there was a flash of electricity, something like lightning. It was of a bluish color — very bright. When he was taken to his home, after the accident, marks were found upon his person, which a witness who made a special study of the effects of electricity upon the human frame, testified were such as are caused by the passage of an electric current. Another witness, who was standing upon the platform, testified to the flash of electricity; that it was all around the car; that there was no flash on the back platform; that it came from the front of the car and that it closed his eyes and blinded him for a moment and that he felt the shock and he describes it as if needles and pins were going through him.

It appeared in evidence that just prior to the occurrence described by the plaintiff and his witness, a fuse on the car had blown out, but it seems to be admitted by all that that circumstance was not and could not have been the cause of the accident; and further than that, the blowing out of a fuse in the operation of an electric railway car is a common occurrence and negligence is not predicable of it. But the plaintiff undertook to establish affirmatively that the occurrence was to be ascribed to another cause which involved negligence, namely, imperfect insulation of the wires in the car which

acted as conductors of the electricity by which that car was operated. The only evidence offered on the part of the plaintiff to sustain that contention was of an expert, who testified that electricity could not escape into the body of the car if the insulation were in proper condition, thus giving rise to the inference that because electricity did enter the body of the car, the insulation was imperfect. But this same witness testified that if on a car in which a fuse had blown out, the fuse is replaced and the car proceeds and continues to do its work "it is an indication that the wiring was all right." The defendant proved that on the same day of the accident and before the fuse blew out, the car was operated in perfect safety and on the same day, immediately after the fuse blew out and was replaced, the car continued in service and was operated with safety. It was thus shown that the accident was not attributable to the blowing out of the fuse and that the conditions were such as to render it plain that the escape of electricity into the car was not due to imperfect insulation. The learned trial judge dismissed the complaint as being " not sufficient to submit to the jury the question of the defendant's negligence."

Although the plaintiff failed to establish affirmatively the cause of this accident, it is claimed the case should have been submitted to the jury as one controlled by the maxim *res ipsa loquitur.* " When the thing causing the injury is shown to be under the control of a defendant and the accident is such as in the ordinary course of business does not happen, if reasonable care is used, it does, in the absence of explanation by the defendant, afford sufficient evidence that the accident arose from want of care on its part." (*Breen* v. *N. Y. C. & H. R. R. R. Co.,* 109 N. Y. 297; *Seybolt* v. *N. Y., L. E. & W. R. R. Co.,* 95 id. 562; *Edgerton* v. *N. Y. & H. R. R. Co.,* 39 id. 227; *Poulsen* v. *Nassau Electric R. R. Co.,* 18 App. Div. 221; *Gilmore* v. *Brooklyn Heights R. R. Co.,* 6 id. 119.) Here the plaintiff was a passenger on the car of a common carrier and was in contractual relations with that carrier. The defendant owed a duty which transcends that which it would owe to a person not standing in that relation to it. The cases of *Piehl* v. *Albany Railway* (30 App. Div. 166; affd., 162 N. Y. 617); *Cosulich* v. *S. O. Co.* (122 id. 124) and *Welsh* v. *Cornell* (168 id. 508) are not cases of common carriers. In the *Cosulich* case the distinction is pointed out

between cases in which contractual relations exist and those in which the defendant owes no other duty than to use such ordinary care and caution as the nature of a particular business demands to avoid injury to others, and it is stated that there is a difference in the rule requiring affirmative proof of negligence beyond the mere fact of the occurrence itself, as that rule is to be applied to common carriers or to other defendants. In *Griffen* v. *Manice* (166 N. Y. 193) referring to the maxim, the court says, it is based in part " on the consideration that where the management and control of the thing which has produced the injury is exclusively vested in the defendant, it is within his power to produce evidence of the actual cause that produced the accident, which the plaintiff is unable to present;" and " the question in every case is the same whether the circumstances surrounding the occurrence are such as to justify the jury in inferring the fact in issue. * * * When the facts and circumstances from which the jury is asked to infer negligence are those immediately attendant on the occurrence, we speak of it as a case of '*res ipsa loquitur;*' when not immediately connected with the occurrence, then it is an ordinary case of circumstantial evidence."

In the present case, assuming the account of the accident given by the plaintiff's witnesses to be true, he received a shock from a discharge or escape of electricity in the car and sustained his injuries in consequence thereof. The circumstances from which the inference of negligence is to be drawn are those immediately attending the occurrence, and constitute the cause itself. Although the plaintiff undertook to prove a specific cause and failed therein, that did not necessarily in this case take away from the defendant the legal obligation to give an explanation of this extraordinary occurrence. It is true that the plaintiff by his own witness, a skilled electrician, acquainted with the method by which electricity is conveyed into overhead trolley cars and with the machinery and the regulator, testified positively that there is no way in which the electric fluid could escape into the body of the car, except through a defect in the insulation; but the defendant's skilled electrician testified that he had known metal work to become alive from trouble with the *motor* or trouble *with the connections to the motor near the truck* and that the metal work of a car cannot become charged unless there is something out of order about the electrical apparatus — " that is not a

normal function, it is something out of the way." While the acci-
dent from which the plaintiff suffered was not caused by the blow-
ing out of the fuse or imperfect insulation, it may have occurred
from some other among the causes mentioned by this witness, and
on the whole evidence it was for the defendant to make the required
explanation.

The judgment should be reversed and a new trial ordered, with
costs to appellant to abide the event.

Van Brunt, P. J., O'Brien and Laughlin, JJ., concurred
McLaughlin, J., dissented.

Judgment reversed, new trial ordered, costs to appellant to abide
event.