tion as to what such proceedings should be. It seems to me that the case is in the same position as where a case has been tried before a jury and the jury have failed to agree. Neither party can enter a judgment against the other. The plaintiff cannot be called upon to discontinue his action and commence another. It is a case for a new trial.

The parties have stipulated that the case shall be tried before a referee. The question presented here is whether such new trial shall be before the same referee or before a new one. The practice of causing such rehearing to be had before the same referee has been condemned in this department in the case of Matthews v. Matthews, 53 Hun, 244, 6 N. Y. Supp. 589. It is no reflection upon the referee who previously heard the case to send it to another one. It is the almost universal practice pursued where a new trial is granted upon the report of a referee. A person who has once tried and determined a case cannot come to a rehearing thereof with that unbiased and virgin mind that is to be desired where a question of fact is to be passed upon. The order of reference heretofore granted is therefore vacated so far as it designates the referee, and a new referee will be appointed to hear and determine all the issues involved in this action.

For the purpose of enabling the defendant to defend herself upon the former trial an allowance for the services of counsel was granted. Inasmuch as she has now to meet the expense of another trial, a further allowance for counsel fee in the sum of $100 will be granted.

The attorney for the plaintiff may prepare an order in accordance with the terms of this memoranda, the name of the referee to be inserted by the court upon presentation of the order.

Ordered accordingly.

---

(42 Misc. Rep. 622.)

### BARNES v. NEW YORK CENT. & H. R. R. CO.

(Supreme Court, Trial Term, Onondaga County. February, 1904.)

1. CARRIERS—INJURY TO PASSENGER—EVIDENCE.
    In an action against a railroad company by a passenger for damages for personal injuries sustained by slipping at night on an asphalt pavement in its train shed, while alighting from its train, evidence *held* sufficient prima facie from which a jury might infer that the company had not exercised that care which the law requires, and to justify a verdict on the doctrine of res ipsa loquitur.

Action by William M. Barnes against the New York Central & Hudson River Railroad Company. Motion for nonsuit denied.

L. B. Williams, for the motion.
John H. McCrahon, opposed.

ROGERS, J. This action was brought to recover damages alleged to have been sustained by the plaintiff on the evening of November 27, 1902, by slipping upon grease or oil on the platform of defendant's passenger station, while alighting from one of its cars, at the city of Syracuse. At this city the defendant maintains a train shed about 700 feet long and 80 feet wide, covering several tracks that at this point run east and west. Between the tracks is an asphalt

platform, the top of which is 8 to 10 inches above the top, and from 16 to 20 inches outside, of the rail, making a convenient, and ordinarily a safe, method of alighting from the steps of a passenger coach. The passenger station is on the south side of the shed, and persons taking the trains usually pass from it through a door, where a man is stationed, who permits passengers to enter the shed on presentation of a ticket. On the easterly end is an iron fence with gates, and from the iron fence on the north there extends westerly a tight board fence for a considerable distance. The west end is also fenced and has gates. These gates are opened for the passage of trains, and are continuously open at night. A crossing tender is stationed at each end. Entrance to this shed may be made through the restaurant, which is in the basement of the passenger station, and is effected also at the open gates; so that while it is intended that only passengers, employés of the defendant, and of express and baggage companies doing business with the defendant, should be admitted to the shed, other persons not infrequently do gain admission. At night the shed is lighted by arc lights suspended from above, and 45 to 55 feet apart. Fifty-four trains pass in and out each 24 hours. At the time in question it was the course of business to inspect cars at this station. The inspector was followed by an oiler, with a two-gallon can having a bail like an ordinary pail and a spout, and, if a journal was found to require it, the lubricant was poured into the box. It was known as "Galena car oil," and was black. The oil was kept in stock in the supply room in the train shed in charge of a man detailed to perform that duty, and to which none but oilers had access, except when required for use elsewhere, and then the person obtaining it was obliged to present a permit therefor to the man in charge. The station master on previous occasions had noticed that oil was spilled on the platform by the oilers, but has no knowledge of its being spilled at this time. The defendant had a man, whose duty it was, among other things, to sweep the platform twice each day—forenoon and afternoon. He does not recall the day of the accident, and is not able to state what time that day he did the last sweeping, nor what, if anything, he found. About 9 o'clock on the evening of the day in question the plaintiff purchased a ticket at defendant's station at Constantia, and took passage for Syracuse, arriving there about 9:50. His train entered the shed at track 5, alongside and south of the most northerly section of the platform. As he stepped down from the car he says he put his foot upon a portion of the platform covered with grease, causing him to slip and fall; that he then looked and saw the grease was thick and black; and he seeks to have it inferred that it was the same kind that was customarily used in oiling car wheels. There is no evidence as to the length of time it had been there, and no direct evidence how or by whom it was so placed. It is quite certain that it was not occasioned by dripping from a journal, as that would have fallen between the rail and the platform; but it is argued by plaintiff's counsel that because of the supposed identification of the grease, the manner it was poured into the journal by the oiler, the possibility of spilling, and the exclusion—though only partial—of all persons other than passengers,

employés, and others having business with the defendant, the jury would be authorized to find it was placed there by one of the defendant's servants, and that the defendant, if that fact were found, would be liable as and for the negligent act of its employé. To this contention I am hardly prepared to assent. The burden of proof of the defendant's negligence is upon the plaintiff. Oil or grease spread upon a cement floor, and seen in the nighttime, to the interested observer, might look very like oil or grease that he later saw in a tank or can, and still not have been from the same source of supply, nor the same kind. Doubtless, other means of depositing oil, just as probable, existed, in which case the burden resting upon the plaintiff would not be borne. Searles v. Manhattan R. Co., 101 N. Y. 661, 5 N. E. 66; Shultz v. Hoagland, 85 N. Y. 464; Adams v. Metropolitan R. Co., 82 App. Div. 354, 81 N. Y. Supp. 553. Nevertheless, according to the plaintiff's testimony, the grease was there, and he fell and sustained injuries in consequence.

Do these facts make out a prima facie case of negligence for which the defendant may be held liable? The defendant had the exclusive control of the train shed. Its opportunities to observe the condition of the platform, to maintain a careful and efficient patrol at all times, and discover and remove the grease, were practically without limitation. The plaintiff, on the other hand, could control only his own movements upon the place the defendant had provided for him to travel. He did not make the place, nor had he anything to do with its maintenance. He had paid, and the defendant contracted, for his passage from Constantia to Syracuse; and as a part of the same contract he was entitled to a reasonably safe means of exit from the train to the street. He had a right to rely upon the platform being free from substances that would cause him to slip without taking special pains to ascertain whether it was or not before he stepped. Liscomb v. N. J. R. R. & T. Co., 6 Lans. 75, 78; Ferris v. Union Ferry Co., 36 N. Y. 312.

The defendant was not bound to construct its platform so as to make accidents to passengers using it impossible, or to use the highest degree of diligence to make it safe and useful. It was bound simply to exercise ordinary care, in view of the dangers attending its use, to make it reasonably adequate for the purpose to which it was devoted. Lafflin v. B. & S. R. R. Co., 106 N. Y. 136, 12 N. E. 599, 60 Am. Rep. 433; Kelly v. Manhattan R. Co., 112 N. Y. 450, 12 N. E. 383, 3 L. R. A. 74.

It has been said that the measure of care due from a carrier to its passenger whom it invites to use a walk going from its depot to the public street is the same that is required of a municipal corporation with respect to its public sidewalks, which it is required by law to maintain. Bateman v. N. Y. C. & H. R. R. R. Co., 47 Hun, 429. And the defendant's counsel urges that with only this measure of care imposed upon the defendant no liability could accrue without proof that it placed the grease upon the platform; or, if deposited by another, that it permitted it to remain for such length of time that knowledge of its presence might be imputed. It seems to me that the rule laid down in the case cited does not require that degree

of care that should have been observed by the defendant in the case at bar. It excludes that watchfulness—"alert" is the word used—which the carrier is bound to observe. Weston v. New York E. R. R. Co., 73 N. Y. 595. The defendant's shed was a limited territory. It had the power—even though it did not exercise it fully—to refuse admittance to all persons other than its passengers and employés. The place was under its immediate supervision, and could be observed and controlled at all times. Indeed, it was present day and night to look after its own interests, and the safe and convenient coming and going of the persons intrusting themselves to its care. Many trains passed in and out daily, and passengers in great numbers—men, women, children, the weak and the strong—traveled over the platform, and paid for the privilege. The municipality has not that ever-present and coextensive supervision, nor does it receive compensation from persons traveling upon its streets. It seems to me, therefore, that what might be due care in the one case might be considered neglect in the other, and that in this particular case the happening of the accident itself, with the attendant circumstances, was prima facie evidence from which the jury might infer that the defendant failed to exercise that ordinary care which the law requires; that they might conclude that it would not have occurred had the defendant fully performed its duty in the premises; that, in the absence of explanation by the party who, more than any other, ought to know, negligence might be found. In other words, that the doctrine of res ipsa loquitur may be invoked and applied, as was done in the following cases: Where a building adjoining a highway fell and injured a person lawfully thereon. Mullen v. St. John, 57 N. Y. 567, 15 Am. Rep. 530. Where the rail of a trolley road became charged with electricity, so that a horse traveling on the highway and stepping on the rail received a shock, which caused its death. Clarke v. Nassau Electric R. R. Co., 9 App. Div. 51, 41 N. E. 78. Where a span wire supporting a trolley wire near electric-light wires broke, and fell into the highway, became charged, and burned a passer-by. Jones v. Union R. Co., 18 App. Div. 267, 46 N. Y. Supp. 321. An electric shock to a passenger riding on electric car received from a brass rod guarding the car window, which he grasped. D'Arcy v. Westchester Elec. R. Co., 82 App. Div. 263, 81 N. Y. Supp. 952. Where a passenger elevator descended with rapidity and struck the bumpers at the bottom of the shaft with such force as to rebound and cause the counterbalance weights to fall down the shaft, break through the top of the car, and injure a passenger inside. Griffen v. Manice, 166 N. Y. 188, 59 N. E. 925. "There must be reasonable evidence of negligence, but when the thing causing the injury is shown to be under the control of a defendant, and the accident is such as, in the ordinary course of business, does not happen if reasonable care is used, it does, in the absence of explanation by the defendant, afford sufficient evidence that the accident arose from want of care on its part." Breen v. N. Y. C. & H. R. R. R. Co., 109 N. Y. 297, 16 N. E. 60, 4 Am. St. Rep. 450. See, also, Timpson v. Manhattan R. Co., 52 Hun, 489, 5 N. Y. Supp. 684; Lycett v. Manhattan R. Co., 12 App. Div. 326, 42 N. Y. Supp. 341; Jordan v. N. Y. C. & H. R. R. R. Co.,

165 Mass. 346, 43 N. E. 111, 32 L. R. A. 101, 52 Am. St. Rep. 522; Coleman v. Mechanics' Iron Foundry Co., 168 N. Y. 254, 46 N. E. 1065; Travers v. Murray, 87 App. Div. 553, 84 N. Y. Supp. 558; Brooks v. N. Y. C. & H. R. R. R. Co., 84 App. Div. 633, 82 N. Y. Supp. 1096. Plaintiff's freedom from contributory negligence was properly found by the jury. McDonald v. Metropolitan St. R. Co., 167 N. Y. 66, 60 N. E. 282; Smith v. N. Y. C. & H. R. R. R. Co., 177 N. Y. 224, 69 N. E. 427.

The motion for a nonsuit is denied.

The defendant may be deemed to have moved for a new trial on the minutes, pursuant to section 999 of the Code, and prepare an order in which it shall be recited that the motion is entertained and denied, with a stay of 30 days after entry of judgment, and 60 days in which to make case and exceptions.

Ordered accordingly.