BINSWANGER v. NEW YORK CENT. & H. R. R. CO. (Supreme Court, Appellate Division, Fourth Department. May 3, 1905.) Action by Max Binswanger against New York Central & Hudson River Railroad Company. Werner & Harris, for plaintiff. Harris & Harris, for defendant.

PER CURIAM. Plaintiff's exceptions sustained, and motion for new trial granted, with costs to the plaintiff to abide event. Held, that the questions of defendant's negligence and the plaintiff's freedom from contributory negligence were questions of fact for the jury, and that this was practically held by this court upon a former appeal in the same case from an order granting a new trial after a nonsuit (93 App. Div. 604, 86 N. Y. Supp. 1129), following the decision in Brooks v. N. Y. C. and H. R. R. Co., 84 App. Div. 633, 82 N. Y. Supp. 1096. The reasons for the holdings in the cases herein referred to are satisfactorily expressed by Mr. Justice Rogers, in an opinion at Special Term in the case of Barnes v. N. Y. C. & H. R. R. Co., 42 Misc. Rep. 622, 87 N. Y. Supp. 608.

STOVER, J. (dissenting). This is an action brought for personal injuries sustained through the alleged negligence of the defendant. Plaintiff was a passenger upon one of the trains of the defendant from Rochester to Buffalo. He arrived at the Buffalo station of defendant about 20 minutes before 1 o'clock on the 27th day of May, 1902. He alighted from the train, walking close to the train about half a car's length. He then stopped and waited until some trucks had passed, and walked towards the main platform leading north and south to the exit. He reached the north and south platform and turned north towards the exit. He then describes the accident as follows: "After I had turned north my right foot slipped out from under me, and I fell onto the exposed ties and tracks on the east, over the east edge of the platform. I lay there stunned for a few moments. A gentleman who was walking behind me assisted me to regain my feet and took hold of my right hand, also my right side. * * * I stood there beside him in that position about five minutes. * * * After I had been assisted to my feet in the Buffalo depot, and stood there about five minutes, I looked around to see what caused my right foot to slip, and I noticed south of the south rail of the fourth track a pool of oil where I had slipped through; that is, I saw the foot mark of the slipping in the oil. This pool of oil, I should say, was about a foot in width and a little longer in length. The length of it was running alongside of the track. It was thicker in the center than it was along the edge." He states in another portion of his testimony: "I have stated that I got off from this train in the depot at Buffalo with other passengers. With respect to them I was about in the center. As I went onto this north and south platform, where I fell, some were ahead and some were behind, very close to me. When I fell I was looking north, straight ahead of me, towards the exit." There was some evidence that the plaintiff had told a conductor in the employ of the defendant that he had slipped upon a banana peel or piece of orange. There was also evidence that the plaintiff, about two weeks after the accident, made a written statement, in which he said that he slipped upon the ball of the rail; but this was denied by the plaintiff, and upon this appeal, giving the most favorable view to the plaintiff's testimony, it may be assumed that he fell by reason of slipping upon the oil in question. There was evidence on the part of the employés of the defendant that they were in and about the station all day attending to their duties, which were to see that the station platforms were kept clear of oil or grease, and picking up anything that might be dropped upon the platform. The evidence shows that the train shed consists of six tracks inside of the shed, and three platforms, three crosswalks, and an overhead bridge leading from the waiting room across these tracks for the use of passengers. The train shed itself was a building 756 feet long and 120 feet wide at the west end and 90 feet at the east end. The roof was fully inclosed. There were three platforms running east and west. The three platforms running north and south were at grade. At either side of these north and south platforms the east and west platforms ascended. It appeared that there were something like 300 trains arriving and departing daily through this station. The station master had charge of the station, and the general supervision of the depot and of the employés therein. He testified that at the time of the accident there were in the station, on duty all the time in the train shed, two cleaners and twelve ushers. The duties of the ushers were to direct people to the trains and from the trains to the exit. The duties of the cleaners were to wipe up the oil and scrape up the grease, and for that purpose they were provided with scrapers and a broom, and waste to be used in wiping up oil and in keeping the platforms clean. It was the duty of the ushers, also, if anything dropped from a passing train and a cleaner was not there, to remove it, or hunt up a cleaner and have the deposit removed. The station was used by the New York Central, Lake Shore & Michigan Southern, West Shore, Pennsylvania, Buffalo, Rochester & Pittsburg, Nickel Plate, Wabash, and Grand Trunk railroads, and the trains of all those roads used all the tracks that were under the train shed indiscriminately. It appeared from the evidence that the car inspectors were in the habit of examining the cars standing on the tracks along the platforms, and pouring lubricating oil upon the journals of the cars; that the engineers in charge of the locomotives would oil different portions of the engines while in the station; that in doing this they used oil cans; that at times oil would drip from a journal, either from the overflow from the box or in dripping from the cans when poured; and that this happened in the ordinary operation of the trains through the depot. I think it may be assumed that these facts may be considered as undisputed, and the question is presented as to whether the railroad company had exercised the care required by law, under the circumstances shown.

The testimony on the part of the defendant showed that on the day in question the ushers and cleaners were engaged about these platforms. The cleaners themselves who were on duty that day were sworn as witnesses, and testified that they were on duty from 6 o'clock in the morning until 6 o'clock at night; that all the time they were going back and forth on the platform; that they did not hear of any accident to the plaintiff on that day, and they

knew of no oil having been upon the platform that was not wiped up as soon as discovered. The case is novel in some respects, but I do not think it is necessary to announce any new principle of law in order to correctly dispose of it. The defendant was bound to exercise ordinary care and prudence in the care of its station platforms, and it would be quite difficult to specify what more it should have done under this rule to protect its passengers. It might have an usher, who would conduct each passenger to some place of safety; but the law does not require this. As has been frequently said in negligence cases, it is not an insurer of safety; but the law will hold it to the ordinary degree of care which the circumstances require. That oil and refuse will be dropped about station platforms, where many thousands of people are daily passing, is matter of common observation; and it would be impossible to keep any spot absolutely free from refuse or dirt of all kinds, where such a number of people were passing. That oil would be apt to drop from any machine or receptacle in which it might be used is also of common observation, and we need only to pass over the tracks of any railroad to discover at almost any point along the roadbed evidence of the dripping of oil from cars and engines as they have passed. So, with the liability almost certain of oil to drop, the defendant has provided a force of men whose duty it is to discover and remove any oil or other refuse which may be deposited upon the platforms or tracks. It will be remembered that this oil was discovered not on the platform, where it would possibly have been deposited only by carelessness; but it was found close to the tracks of the roadbed. The defendant kept its men, and the evidence shows that they were on duty, inspecting, endeavoring to discover, and ready to remove any refuse which might be deposited upon the platform, so that the platform is shown to have been properly inspected, and defendant cannot be charged with negligence for failure to inspect. But it is said that it was not shown by all of the employés of the defendant that they did not discover. We do not think that the defendant was bound to show this. It has shown reasonable inspection. It kept a corps of men sufficient to discover and remove any refuse which might have been deposited there; and we think that complies, so far as this case goes, with the rule of law which requires ordinary care to discover any defect or obstruction. O'Reilly v. L. I. R. R. Co., 4 App. Div. 139, 38 N. Y. Supp. 779; McGrell v. Building Co., 153 N. Y. 265, 47 N. E. 305, and cases cited; Loftus v. Ferry Co., 84 N. Y. 455, 38 Am. Rep. 533, and cases cited. The plaintiff relies upon the case of Brooks v. N. Y. C. & H. R. R. R. Co., 84 App. Div. 633, 82 N. Y. Supp. 1096, but the facts in that case were quite different from those now before us. The trial judge, in disposing of this case, points out this difference; that is, in both those cases the accident which occurred from a similar cause, oil upon the platform upon which the person injured slipped, happening in the nighttime when no care whatever was being taken to prevent accidents of this nature; and in one of the cases cited the

accident occurred at a season when traffic was unusually large, and the passengers were invited to alight in the nighttime, or without sufficient care in furnishing a proper place at which a passenger might alight from the train. The Barnes and the Brooks Cases may be said to be close to the border line, and should not be precedents for cases not falling within their precise limits. The presence of the oil rests upon the evidence of the plaintiff alone; but, as observed above, for the purpose of this argument it may be assumed that he has told the truth with reference to that. If the deposit of this oil was so apparent that it should have been discovered immediately upon its dropping there by the employés of the defendant, it was certainly as obvious to the plaintiff when he undertook to walk across the space where the oil had dropped. If it was such a plain, open, and easily discovered obstruction, the plaintiff, in the exercise of ordinary care, ought to have been able to discover it, for he must be charged with notice of such things as were open and visible to any passer-by. He cannot say that it was the duty of the defendant to discover it, because it was open and plainly visible, and yet shut his own eyes, and claim that he has discharged the duties that the law has imposed upon him. The cases of this character are similar to those against municipalities for injuries received by falling upon slippery walks. The rule of law is the same in each class of these cases. The defendant is bound to exercise ordinary care under the circumstances, and it could hardly be said that if the action were against a municipality, and there was no more evidence of negligence on the part of the defendant or of the absence of contributory negligence on the part of the plaintiff, there could be a recovery. Kelly v. Otterstedt, 80 App. Div. 398, 80 N. Y. Supp. 1008. Laying aside for the moment the action of the defendant, the plaintiff himself might have, by the exercise of ordinary care, avoided stepping into the oil, so far as any evidence in the case now shows.

To summarize the propositions: It seems to us that the defendant had provided and enforced reasonable inspection of the premises, and made reasonable attempts to remove all oil and refuse from its platforms, and that in doing this it had exercised the care which the law required. It would be quite difficult to find a spot in any station where trains have been arriving for any length of time that would be free from oil or water, unless it is some distance from the track or roadbed. Plaintiff saw that he had to cross the track, and should have seen where he walked. We think the plaintiff failed to show that the defendant had not exercised the care which the law required; and to hold the defendant, under the circumstances of this case, liable for the injury, we think, would be establishing a more stringent rule than has heretofore existed. We think the nonsuit was right, and the judgment should be affirmed.