## MARCH, 1939.

MARIE TAYLOR, RESPONDENT, V. PRUDENTIAL INSURANCE COMPANY OF AMERICA, APPELLANT.—131 S. W. (2d) 226.

Kansas City Court of Appeals. July 3, 1939.

318

*Ryland, Stinson, Mag & Thomson, William E. Durham* and *Robert E. Rosenwald* for appellant.

*Howell & Jacobs, Allen E. Cox* and *Scott R. Timmons* for respondent.

320

SHAIN, P. J.—This is an appeal by the Prudential Insurance Company of America from a judgment of the court sustaining plaintiff's motion to set aside an involuntary nonsuit. At the close of plaintiff's case defendant offered a peremptory instruction which was given by the court. Thereupon plaintiff took an involuntary nonsuit with leave

and filed a motion to set said nonsuit aside. This motion the court sustained and defendant has duly appealed to this court.

Plaintiff's amended petition, upon which the case was tried, pleads general negligence, alleging also that the defendant insurance company was the owner and operated and managed an apartment house in Kansas City, Missouri, and, on the 15th day of July, 1937, said defendant was in sole control of said apartment house or hotel, and that a door opened from the lobby thereof at the west side of said lobby into a courtyard on the west side of said hotel and that said lobby and door were under the complete control and maintenance of the defendant; that on said day plaintiff went to said apartment hotel at the invitation of one of the occupants thereof and while passing through said door to go into said courtyard said door suddenly and unexpectedly closed, catching the little finger of the hand of the plaintiff between the door and doorjamb, injuring said finger so seriously that it was necessary to amputate said finger at the proximal joint; that said injury was caused by the negligence of said defendant and that plaintiff was unaware or ignorant of the cause or causes that caused the unexpected closing of said door.

Defendant's answer was a general denial coupled with a plea of contributory negligence.

At the beginning of the trial it was stipulated that, at the time of plaintiff's injury, the defendant owned the property at 2840 Forest Avenue, Kansas City, Missouri, which was managed by the Shryock Realty Company for the defendant. It was also agreed that Nora E. McElvain, employed by said realty company, lived at said premises and rented out apartments to tenants.

The evidence discloses that the plaintiff on July 15, 1937, visited a Mrs. Stotts, a tenant in the apartment building in question, and that she was there during the dinner hour at which time there was a rain storm accompanied with a rather strong wind and plaintiff's evidence is to the effect that after dinner she with her daughter and Mrs. Stotts went to the lobby and started out into the court at the rear of the apartment building to look at a rock garden located there. At that time there was a slight fall of rain and some wind.

The door leading to the garden is at the west side of the lobby and opens on a landing which is five steps above the floor of the lobby, from which landing stairs ascend to the second floor. As plaintiff, her daughter and Mrs. Stotts approached the open door there was no one on the landing or near the door, although there were several people in the lobby. The door, a wooden door of ordinary size and appearance with a stop attached and having several glass panels, opened against the south wall at the side of the landing and plaintiff saw no movement of the door as she approached it. Mrs. Stotts and plaintiff's daughter preceded plaintiff through the doorway, pushing open the screen door. As plaintiff stepped out on the platform west of the door

she rested her right hand on the door casing and the door closed suddenly, catching her little finger and so injuring it that the finger was later amputated at the second joint.

Plaintiff did not see the stop on the door and did not know it was there. Mrs. Stotts examined the stop the morning following the incident in question and found it to be functioning in a normal way. There is evidence that the door never had slammed shut before.

The plaintiff alleged in her petition that it was the duty of defendant to keep the lobby of the apartment building, the landing, the doors and the court in a reasonably safe condition for the protection of its tenants and their callers and visitors. The general allegation of negligence is predicated upon the allegation of failure of defendant to do so.

We will continue to refer to the respondent as plaintiff and to the appellant as the defendant.

The appealing defendant makes specification of errors as follows:

"The court erred in sustaining respondent's motion to set aside involuntary nonsuit for each and all of the following reasons:

"(a) Appellant was not guilty of any act of negligence entitling respondent to recover in this case.

"(b) Respondent failed to make a case for submission to the jury under any legal theory.

"(c) Appellant's instruction, in the nature of a demurrer to the evidence, was properly given."

The judge before whom this case was tried at the close of plaintiff's case gave a peremptory instruction directing a finding for defendant. Thereupon plaintiff suffered and took an involuntary nonsuit with leave. Thereupon the jury was discharged. In due time plaintiff filed motion to set aside involuntary nonsuit. Thereafter and on March 26, 1938, the said motion was taken up by the successor of the judge who had tried the case and said judge sustained the motion to set aside the involuntary nonsuit. It follows that if the judge before whom the case was tried was right in sustaining the demurrer at the close of plaintiff's case, then in that event his successor on the bench was wrong in setting the nonsuit aside and *vice versa*. Thus is stated the question for review herein.

If the plaintiff in this case be entitled to have her case submitted to the jury, the door in question must be concluded from the evidence to be such an "apparatus that in the ordinary instances no injurious operation is to be expected unless from a careless *construction, inspection or user.*" Further it must be concluded from the evidence that at the time of injury the situation was such that it was the duty of defendant, the owner of the apartment building, to inspect as to careless construction or use, if so.

In other words, if defendant be liable in this case the doctrine of *res*

*ipsa loquitur* must have application. Concerning such doctrine it is said in 3 Bouvier's Law Dictionary, Third Revision, 2908, as follows:

"The doctrine is that when a thing which causes injury without fault of the person injured is shown to be under the exclusive control of defendant and would not cause the damage in ordinary course if the party in control used proper care, it affords reasonable evidence, in the absence of an explanation, that the injury arose from defendant's want of care (San Juan Light & Transit Co. v. Requena, 224 U. S. 89, 32 Sup. Ct. 399, 56 L. Ed. 680); where the doctrine was held rightly applied against an electric light company in the case of a person injured while adjusting an electric light in his residence by an electric shock transmitted from outside wires entirely without fault on his part and in a manner which would not have happened had the wires been in proper condition."

In the same volume as above, l. c. 2009, it is said:

"The doctrine means that the facts of the occurrence warrant an inference of negligence, not that they compel such an inference. It does, not shift the burden of proof, nor does it convert the defendant's general issue into an affirmative defence. When all the evidence is in, it is for the jury to determine whether the preponderance is with the plaintiff (Sweeney v. Erving, 228 U. S. 233, 33 Sup. Ct. 416, 57 L. Ed. 815). Whether the defendant introduces evidence or not, the plaintiff is not entitled to a verdict unless he satisfies the jury by the preponderance of the evidence that his injuries were attributable to the defendant's negligence (Stewart v. Carpet Co., 138 N. C. 66, 50 S. E. 562)."

The defendant in this case is charged with the duty imposed upon a landlord to exercise ordinary care for the safety of tenants and invitees. The duty is discussed and clearly defined in Gray v. Perline, 328 Mo. 1192, l. c. 1198, 43 S. W. (2d) 802.

In our review of this case we must take into consideration that the action of the court in setting aside the nonsuit is in plaintiff's favor and we must, therefore, review the evidence in its most favorable light to the plaintiff and if inference from the evidence most favorable to plaintiff classifies this case as coming within the *res ipsa loquitur* rule then there is an issue for the jury and the action of the court in setting aside the nonsuit is justified.

The plaintiff who is the respondent in this case has filed a very elaborate brief wherein the law as to the application of the *res ipsa loquitur* rule is fully presented. Plaintiff cites an opinion by this court, Barber v. Kellogg, 111 S. W. (2d) l. c. 204.

Paraphrasing what we said in that case, we state our conclusions as to law applicable to this case as follows, to-wit: There is no common law duty that requires a landlord to maintain an open door at the place where the plaintiff received her injury. As doors are ordinarily used so as to open and to shut for the use and convenience of the oc-

cupants and invitees in buildings, certainly the fact that a door responds to its functions cannot be charged as negligence. However, if the evidence discloses that a landlord assumed the duty of keeping an outside door open regardless of conditions of weather and regardless of its known function of opening and closing, then he becomes liable in damages for an unannounced discontinuation of that function. In other words, if he assumes such a duty he must either take the door off of its hinges or so securely fasten same open, as that contingency of closing may avoid injury of persons rightfully using said open doorway.

The only evidence before us on this review is that offered by plaintiff. The door in question is described as an ordinary door such as might be seen in any building. The door was equipped with a door-stop of apparently simple design. To operate you put your foot on top and press down and the stop is intended, when down, to hold the door stationary, and to release you put foot on one side and press down. When the stop is released the door is permitted to open or close.

From the facts above, the logical inference is that the door in question was intended at times to be kept open and at other times to be left free to open and shut, either of which function being for the accommodation of the occupants and invitees of the building. In other words, there is nothing in the above state of facts from which it can be inferred that the landlord had assumed the duty to permanently or for any fixed length of time dispense with the utility of the door in its functions as to remaining open or as to its function of opening or closing.

The plaintiff by her witness Mrs. Stotts, the telephone operator, clearly shows that the stop on the door was functioning properly. In the examination of Mrs. Stotts, the following questions and answers appear:

"Q. And did you do anything with respect to the doorstop? A. Well, I examined the doorstop, to see if it was working.

"Q. And was it working? A. Yes.

"Q. How did you examine the doorstop to see if it was working? A. Well, I put my foot on top of it and pressed down and took hold of the door to see if it would move.

"Q. You took hold of the door and shook it, and it held firm at that time? A. Yes.

"Q. Do you know how that stop releases so that stop goes up? A. Well, you put your foot on the side of it and press down.

"Q. On the side of the doorstop? A. Yes, sir.

"Q. And what effect does that have? A. It releases the door.

"Q. And the door will close? A. Yes."

No inference can be drawn from the facts alone as stated above that call for the application of the *res ipsa loquitur* doctrine, and the first petition filed by plaintiff, and of evidence herein, is clearly based upon

specific negligence that defendant negligently and carelessly permitted the door to stay open without a stop so as to hold the door open.

If the *res ipsa loquitur* doctrine applies to this case it must be based on other evidence than that above outlined. We scan plaintiff's brief and note citations to record as to testimony urged as showing application of *res ipsa loquitur* doctrine.

In the examination of Mrs. Stotts, the following is noted:

"Later, when you examined the door, when you were testing the door the next morning, I believe you tested that door stop on there and pressed it down and then I believe you say that you shook the door? A. I shook the door first to see if the door catch was holding and then I took my foot and pushed the stop to see how it worked.

"Q. Yes; and when you pressed that down it remained securely and firmly? Is that correct? A. Yes; that is right.

"Q. Now, Mrs. Stotts, does anyone have anything to do with the opening and closing of these doors, aside from the employees? A. No.

"Q. And that consists of the manager and janitors, *et cetera*, is that right? A. Yes.

"Q. Are there children living out there in that apartment hotel? A. Very small ones.

"Q. Infant children? A. Yes.

"Q. But they do not have children who run around, living in that apartment? A. No.

"Q. Do they clean that stairway and landing each day? A. Yes.

"Q. And that is done by some janitor or houseman around there? A. Yes.

"Q. Now, Mrs. Stotts, I am going to hand you Defendant's Exhibit 3 and ask you to look at that picture and ask you if that is a fair representation of the situation as it existed that evening when you started out into the court yard? A. Yes, sir.

"Q. Was that about the position of the door at that time? A. Yes,

"Q. Do you observe on there, on that picture, the door stop which you later examined?

"MR. ROSENWALD: Just a minute. If the Court please, I think that the picture is the best evidence, and what the witness observed is immaterial.

"THE COURT: I think so too.

"MR. ROSENWALD: And I object to it.

"THE COURT: Objection sustained.

(Mr. Cox here handed Exhibit 3 to the jury.)

"Q. (By Mr. Cox) Have you ever had the occasion to open or close that door? A. No.

"Q. Does it remain open during the summertime? A. Yes.

"Q. Day and night? A. Yes.

"Q. It is only closed in the cold and unpleasant weather? A. Yes.

"Q. During the colder seasons, is that right? A. Yes, sir.

"Q. You have never touched the door yourself, have you? I mean, before this accident occurred, to open or close it? A. No.

"Q. Did you hear the door when it closed?

"Q. You did not hear it slam at all? A. No.

"Q. Or shut? A. No.

"Q. The first you saw of the door was when it was opened after she had screamed? Is that right? A. Yes.

"Q. Some twelve inches? A. Yes.

"Q. Did you push the door on back when you went on in? When you went back into the apartment, after she was injured? A. Well, Mrs. Taylor or I, one, had to open it enough to get through. As to which one of us did, I could not say.

"Q. But do you know whether or not when you went back in you pushed the door back against the wall? A. No, we did not.

"Q. You did not do that? A. No.

"Q. Is there any other attachment on that door which you examined or is there another one on the door aside from that little stop that you referred to of pressing your foot on?

"MR. ROSENWALD: Wait a minute. Do you mean with respect to opening or closing or the knob?

"Q. (By Mr. Cox) Yes; with respect to opening or closing of the door? A. Well, no; only the foot stop and the door knob.

"Q. The door knob to take hold of the door? Is that right? A. Yes.

"Q. The foot stop is on there and that—aside from the door knob and the hinges, are all that is attached to the door? Is that right?

"MR. ROSENWALD: Are you referring to the curtain here in the back?

"MR. COX: No; I am referring to the opening and closing of the door. The shade is not necessarily a part of that.

"Q. (By Mr. Cox) Had this door ever closed before. A. No.

"Q. It had slammed shut before to your knowledge? A. No.

"Q. This was the first time? A. Yes."

From a careful study of the record in this case, we conclude that the only inference that can be drawn from plaintiff's evidence is that plaintiff's injury was caused by reason of the stop on the door not being in a position to function to hold the door stationary at the time and that the wind caused the door to slam shut.

The *res ipsa loquitur* doctrine is one of probabilities wherein, accident occurring, and where there appears no established facts, the presumption of negligence may be inferred from the accident itself. It therefore follows that when a plaintiff's evidence shows the precise cause of an accident the principle of *res ipsa loquitur* does not apply.

The above rule was recognized and adhered to in Heidt v. Peoples Motorbus Co., 284 S. W. 840.

The above case concerns a carrier for hire, wherein contract for hire furnishes basis for application of the doctrine. In the opinion in the

above case attention is called to the fact that, ''Plaintiff not only made a *prima facie* case but destroyed it in the making by showing what specific act caused the accident, and there is nothing in evidence offered upon part of defendant that would aid her in renewing the *prima facie* case which she had destroyed.''

The plaintiff herein urges the *res ipsa loquitur* doctrine with the assertion that the movement of the door was extraordinary in that Mrs. Stotts, who had been an occupant of the building for nine months expressed the opinion that the door never slammed shut before, and qualified same immediately thereafter by saying that it had not done so to her knowledge. This same witness gives testimony that shows that there was nothing extraordinary about the slamming of the door. We can take judicial notice that doors do not slam without some impelling force. The only impelling force was the wind. There was no impelling force in the stop in question, and according to Mrs. Stotts the stop had to be released before the impelling force could slam the door shut. No more complete answer as to the precise cause of the accident can be made.

The rule as laid down in Price v. Met. Street Ry. Co., 220 Mo. l. c. 456, is stated as follows:

''It is true that, where the evidence shows the precise cause of the accident, as in Winship v. Railroad, 170 Mass. 462, 49 N. E. 647, and Buckland v. Railroad, 181 Mass. 3, 62 N. E. 955, and similar cases, there is, of course, no room for the application of the doctrine of presumption. The real cause being shown, there is no occasion to inquire as to what the presumption would have been as to it if it had not been shown. But, if at the close of the evidence, the cause does not clearly appear, or if there is a dispute as to what it is, then it is open to the plaintiff to argue upon the whole evidence, and the jury are justified in relying upon presumptions, unless they are satisfied that the cause has been shown to be inconsistent with it. An unsuccessful attempt to prove by direct evidence the precise cause does not estop the plaintiff from relying upon the presumptions applicable to it. To like effect is D'Arcy v. Railroad, 81 N. Y. Supp. 952.''

As we conclude that the plaintiff in the case at bar has as a matter of fact proved by direct evidence the precise cause of the accident by evidence from which no other inference can be drawn than that the wind forced the door to slam because same was not held in position by the stop appliance being in position to perform such function, we must further conclude that the doctrine of *res ipsa loquitur* has not application.

Not only does the evidence offered by plaintiff in this case disclose the precise cause of the accident, but plaintiff's original petition in evidence clearly shows that prior to the filing of her amended petition she knew the precise cause of the accident and based her cause of action on specific charge of negligence in that the door had no appliance to

keep said door from being suddenly closed by impelling drafts. Certainly one having such precise knowledge is not entitled to have her case submitted on doctrine of probability wherein a presumption becomes a premise to a conclusion.

The rules applicable pro and con are well set forth in the case of Philibert v. Benjamin Ansehl Co., 119 S. W. (2d) 797, which is a *res ipsa loquitur* case in which the defendant's evidence disclosed the precise cause of the accident. In ruling the effect of such showing the court (page 802) said:

"When defendant's witness Guittar was on the stand the defects of the platform were disclosed, but this did not require plaintiff to submit his case on specific negligence. It would have been otherwise, had *plaintiff's evidence* disclosed the defects. [Conduitt v. Trenton Gas & Electric Co., 326 Mo. 133, 31 S. W. (2d) 21; Bond v. St. Louis-San Francisco R. Co., 315 Mo. 987, 288 S. W. 777; Watts v. Mousette, 337 Mo. 533, 85 S. W. (2d) 487, 1. c. 492.]" (Italics ours.) Judgment reversed. All concur.