(18 App. Div. 47.)

WEIGLEY v. KNEELAND.

(Supreme Court, Appellate Division, Second Department. May 11, 1897.)

1. EVIDENCE—PAROL TO ADD TO WRITING.
    Parol evidence is admissible to show that a writing did not embody the entire contract between the parties, but that at the same time they made an oral contract not inconsistent with the writing.

2. SAME—PROOF OF VALUE.
    In an action to recover damages for failure of defendant to deliver certain railroad bonds to plaintiff the report of an engineer employed by defendant to examine into the condition of the road is competent as bearing on the value of the bonds.

3. SAME—BURDEN OF PROOF.
    In such case, where evidence has been given from which the jury might find that the amount of stock and bonds issued by the railroad company exceeded the value of its property, evidence as to the condition of the road is sufficient evidence of the value of the bonds to impose the burden of showing the value of the bonds on plaintiff.

Appeal from trial term, New York county.
Transferred from First department.
Action by William W. Weigley against Sylvester H. Kneeland to recover damages for failure of defendant to deliver certain bonds of

the Texas Trunk Railroad Company, and to recover an interest in said railroad company. From a judgment entered on a verdict in favor of plaintiff for $55,112.38, and from an order denying a motion for a new trial, made on the minutes, defendant appeals. Reversed.

Argued before GOODRICH, P. J., and CULLEN, HATCH, and BRADLEY, JJ.

Austen G. Fox and Joseph G. Deane, for appellant.

Franklin Bartlett, for respondent.

HATCH, J. The plaintiff was the owner of an option for the purchase of the Texas Trunk Railroad, running from Dallas, through the counties of Dallas and Kaufman, in the state of Texas. The railroad was somewhat run down, and a mortgage resting upon the property was in process of foreclosure and sale. The plaintiff negotiated with the defendant for a sale of the option to him, and for a reorganization of the railroad company. These negotiations led to the execution of a contract, dated the 9th day of October, 1885, between the parties, providing for a reorganization of the company and the sum of money necessary to make the purchase, whereby it was agreed that the defendant should furnish four-fifths, and the plaintiff one-fifth, of the purchase price. The latter was also to receive, by virtue of the agreement, $25,000 in bonds of the reorganized company, the bonds issued not to exceed $20,000 per mile. On October 19, 1885, the defendant executed a contract, which recited that the defendant had received from the plaintiff an assignment of all his right, title, and interest in and to a certain agreement of sale of the property of the Texas Trunk Railroad Company, in consideration of which the plaintiff was to receive $25,000 in cash if the agreement of purchase was consummated, and upon the delivery of said property to the defendant and his associates by deed of conveyance from the present owners; also $25,000 in bonds of the company upon the property of the company when organized, the same to be delivered to the plaintiff when issued. The plaintiff has been paid on account of this contract the sum of $10,000 in cash, and no more; and the bonds provided for, although issued by the company, have never been delivered to the plaintiff, although demand has been duly made by the plaintiff for their delivery. On December 5, 1885, the defendant gave to the plaintiff a receipt, which recited that he had received the sum of $15,000 in cash "paid to me for and in full consideration of a one-twentieth interest in the Texas Trunk Railroad Company of Texas, by W. W. Weigley, * * * under the provisions of our agreement dated October 9, 1885, and the supplemental agreement. * * * I hereby bind myself, my heirs and assigns, to deliver, or cause to be delivered, to the said Weigley or order, his heirs or assigns, his proportionate share of the stock and bonds when issued by said company under the reorganization thereof." At the same time, although under date of December 4, 1885, the plaintiff executed a receipt for the sum of $25,000, as per the written agreement.

The testimony tended to establish that the last writing was made as a substitute for the agreement to pay the $25,000 cash, and that the purchase price of the one-twentieth interest was in fact the

$15,000 remaining unpaid under the former agreement. It is ad-mitted that the road was reorganized, and that the bonds and stock, as contemplated, have been issued by the reorganized com-pany. The action seeks to recover the value of the $25,000 in bonds, under the agreement of October 19, 1885, as its first cause of action, and the value of the one-twentieth interest in the stock and bonds of the railroad company, as its second cause of action. The defendant claims, by way of defense to the first cause of action, that the plaintiff failed to fulfill his first agreement, by failing to cause to be delivered a perfect title, which was a condition precedent to his right to receive the money; and, as to the second cause of action, that the parties agreed to enter into a joint venture in the railroad property, the plaintiff taking therein a one-twentieth interest, and that he thereby became liable to pay that proportion of the cost and of the losses arising therein; that the defendant has paid and expended at least the sum of $600,000, of which sum the plaintiff has neglected to pay his proportion; for a separate defense and counterclaim, avers failure to perform the agreement, and seeks to offset certain sums paid and expenses incurred on ac-count of the failure of the plaintiff to perfect title to the railroad, by means whereof the defendant has suffered damage. Although the evidence and examination of the plaintiff extended over the entire range covered by the pleadings, we are not called upon to pass upon many of the questions embraced therein, and which en-gaged the attention of the court upon the trial. Both parties are now agreed upon certain facts, which somewhat limit the range of discussion. It is admitted that the second agreement, of October 19, 1885, was a new agreement, whereby the defendant became the sole owner of the property; and the relation of the parties then was that the plaintiff became absolved from payment of the one-fifth of the purchase price, and the defendant became obligated to pay to the plaintiff the sum of $25,000 in cash, and to deliver $25,000 in bonds, par value, when the company was reorganized. This leaves the rights of the parties upon this branch of the case to be determined by the receipt and agreement of December 5, 1885, and the evidence in connection therewith. It is conceded that the consideration mentioned in this paper was the balance of the sum of $25,000, agreed to be paid by the defendant in cash under the agreement of October 19th. Upon the face of the paper executed by the defendant under date of December 5th, nothing appears which constitutes it anything else than a receipt for the $15,000 as a consideration for the one-twentieth interest in the railroad, and an agreement by the defendant to deliver the stock and bonds representing that interest when they should be issued. The refer-ence to the two prior agreements does not have the effect of changing its character. The first agreement was abrogated by the parties, and the relation changed from that of joint interest to that of debtor and creditor, and this relation continued. No change was made which in any sense revived the former interests, so as to make them a part of the last instrument. Effect of this character cannot be given to it, as it would revive entirely different and an-

tagonistic relations. If the first agreement were revived, the relation of joint owner would be established; if the second, the relation of debtor and creditor. This condition cannot exist with respect to the same property, and embracing the same transaction. The defendant could not be sole owner, and have another jointly interested with him. The plaintiff could not part with his title absolutely, and still have an interest therein and a debt therefor against the purchaser. It is quite evident, therefore, that this reference to the agreements is simply a recital, and can have no effect upon the construction of the instrument itself. As there is therefore no ambiguity in the instrument itself, its construction becomes a question of law for the court. Tunbridge v. Read (N. Y. App.) 16 N. E. 534. In fact, it construes itself, in terms, as a receipt for the money, and an agreement by the defendant to deliver the stock and bonds. It evidences payment for a purchase, with agreement and provision for delivery of the property purchased, and nothing else. The consideration could be inquired into, and parol proof given in connection therewith. The agreement to deliver is absolute, and is not the subject of variance by parol proof. Coon v. Knap, 8 N. Y. 402. But, while this must be the construction of the instrument, it does not follow that the defendant was debarred from showing that at the time of its delivery there was an oral agreement entered into between the parties by which the plaintiff became jointly interested with the defendant in the railroad venture. Such an agreement would not be necessarily inconsistent with the terms of the written instrument, and, if made as a part of the whole transaction, its existence could be established by parol, without infringing the rule which rejects parol proof to vary the terms of a written instrument. Chapin v. Dobson, 78 N. Y. 74. The proof given upon this branch of the case was conflicting, and some of the plaintiff's statements are not in entire harmony. But he put in issue, squarely, the version of the transaction given by the defendant, and the whole case upon this branch became a question of fact for determination by the jury. So far, therefore, as the main propositions in the case are concerned, the case made entitled the plaintiff to have his case submitted to the jury.

This brings us to a consideration of the errors alleged to have been committed upon the trial. The first which we consider relates to the report made by Osgood, the railroad engineer, sent by the defendant to examine into the condition of the road. The record in this respect shows that Osgood was a railroad engineer; that he was sent by the defendant for the purpose of which his report speaks, and for the purpose of informing the defendant of the condition of the road. It was delivered by the defendant to the plaintiff for the purpose of making an affidavit, and, taken in connection with the proceedings then pending, it is fair to presume that it was for the purpose of establishing the condition of the road. The testimony of plaintiff is that the defendant stated to him, when he delivered the report, that Osgood had been sent to make a "thorough investigation of the then condition of the

then Texas Trunk Railway, for the purpose of putting it in proper condition, and extending it and issuing the bonds thereof.". The report bore directly upon the value of the road, and, consequently, upon the value of the stock and bonds. It therefore bore directly upon the issue presented in the present case, as being some evidence upon the subject of the value of the stock and bonds for which the plaintiff was seeking to recover. We think that the connection of the defendant in procuring the report, the purpose of procuring it, and the use thereafter made of it, constituted an admission or declaration of the defendant, and that it was competent evidence upon the question of the value of the stock and bonds, its weight as evidence being for the jury. Atkins v. Elwell, 45 N. Y. 753.

The court was requested by the defendant to charge that "the burden of proof is upon the plaintiff to show what the value of the bonds and stock was in or about February, 1890." This request was refused, and the defendant excepted. The defendant was entitled to the charge as requested. It is doubtless the law that, in the absence of all proof upon the subject, the bonds would be presumed to be of the value appearing upon their face. But this would only be a presumption, and in no sense conclusive. It is evidence, like other evidence in the case, and its weight depended largely upon the character of the proof. Measured by the proof in the case, it evidently was not of great value. The jury had before them the purchase price of the road, its condition in much detail, the amount of its bonded indebtedness, and its stock issue. The value of the bonds and stock would depend upon the value of the property, and the jury might well find, from the evidence, that the value of the stock and bonds was in excess of the value of the security for their payment, and thus reach the conclusion that the securities were not worth their face value. The burden of proof rested upon the plaintiff to establish the amount he was entitled to recover, and this depended upon the value of the stock and bonds. Whatever weight the presumption had was a part of this proof, in connection with the other evidence in the case, and did not have the effect of shifting the burden to the defendant. It remained with the plaintiff, and he was required to establish his case by a preponderance of evidence. Trust Co. v. Siefke, 144 N. Y. 354, 39 N. E. 358. The refusal to charge as to the burden of proof presented a substantial question, and affected a substantial right. Its refusal in a proper case constitutes reversible error. Whitlatch v. Casualty Co., 149 N. Y. 45, 43 N. E. 405. In view of the discussion already had, we do not deem further reference to the questions raised necessary for a subsequent trial of the action.

For error in refusing to charge as requested, the judgment should be reversed, and a new trial granted, with costs to abide the event. All concur.