LEVI HUSSEY, Respondent, *v.* DEWITT C. FLANAGAN, Appellant.

Second Department, June 27, 1923.

Conversion — action to recover for conversion of stock and bonds — defendant who was interested with plaintiff and another in canal agreed to transfer to plaintiff certain stock and bonds to be paid to defendant by purchaser or builders — agreement was not to be effective if negotiations pending for construction were not consummated — negotiations were consummated though contract was subsequently modified by other agreements — defendant failed to transfer stock and bonds to plaintiff — not error to refuse to submit question whether negotiations were consummated — defendant is trustee of stock and bonds and liable in conversion — direction of verdict in favor of plaintiff for face value of stock and bonds was proper.

In an action for conversion to recover the value of stock and bonds it appeared that the defendant who was interested with the plaintiff and another in the construction of a ship canal agreed, on a settlement of the rights of the parties, that if negotiations then pending with responsible parties were consummated he would turn over to the plaintiff certain stock and bonds to be paid to him by the purchaser of the canal or its builders; that the parties with whom the plaintiff was negotiating executed an agreement which was modified later by other agreements; that the defendant received all the stock and bonds under the agreement with the other party and failed to turn over to the plaintiff his share thereof on demand; and that defendant at no time before the trial contended that the negotiations pending at the time of the agreement between the parties hereto were not consummated.

*Held*, that it was not error for the court to refuse to submit to the jury the question whether the negotiations which were pending at the time of the execution

of the contract were consummated since the evidence permits of but one conclusion and that is that the defendant by his representations to the plaintiff construed the subsequent agreements or modifications with the same parties as a part of the original agreement.

The defendant was a trustee or agent of the plaintiff's share of the stock and bonds and on receipt thereof held them for the plaintiff in that relation, and when he refused to deliver them on demand there was a conversion for which the defendant is liable to the plaintiff.

The trial court was justified in directing a verdict for the face value of the stock and bonds since there was evidence that the stock and bonds were of substantial value and the defendant did not ask to go to the jury on the question of the value thereof.

JAYCOX and MANNING, JJ., dissent.

APPEAL by the defendant, DeWitt C. Flanagan, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Kings on the 9th day of November, 1922, upon the verdict of a jury rendered by direction of the court, and also from an order entered in said clerk's office on the 8th day of November, 1922, denying defendant's motion for a new trial made upon the minutes.

*Isadore Shapiro* [*Irwin Untermyer* and *Clarence V. Opper* with him on the brief], for the appellant.

*Richard T. Greene* [*John L. Feeny* with him on the brief], for the respondent.

KAPPER, J.:

The defendant was held liable by the learned trial justice for converting stocks and bonds of the respective par values of $100,000 and $15,000. On March 20, 1906, an agreement was signed by the parties and one Charles C. Dodge, which recited that they were " severally interested in the construction, completion and financing of what is known as the Cape Cod Ship Canal and have had various agreements amongst themselves as to the respective shares of the stocks, bonds and profits which they should severally receive from any sale of said project;" and that "negotiations are now pending and almost completed between the said DeWitt C. Flanagan, and responsible parties, who are expected to finance the construction of said canal, and it is deemed best that the rights of the several parties to this agreement be fixed anew and all former agreements and contracts between them be mutually annulled and abrogated;" therefore, it was agreed that in the event " that the negotiations now pending between DeWitt C. Flanagan and the parties hereinbefore indicated, for the financing and construction of the Cape Cod Ship Canal shall become consummated, that, in lieu of the compensation and share which the said Hussey was entitled to receive under said prior contracts, he shall receive

from the said DeWitt C. Flanagan, *pro rata* as and when the securities shall be paid to the latter by the purchasers or builders of said Canal or otherwise; but in no event unless and until the securities are so received by said Flanagan, One hundred thousand dollars of the full paid capital stock of the Boston, Cape Cod and New York Canal Company, and Fifteen thousand dollars par value of a total issue of not exceeding $6,000,000 of the first mortgage bonds of said Canal Company, from and out of the securities so received and not otherwise."

The agreement then provided that if the canal company's stock should not be paid to Flanagan by the " purchaser," and in lieu thereof stock of " a holding company " should be issued and paid to Flanagan, Flanagan's obligation to plaintiff was then to be remitted to the *pro rata* portion of such stock as the same should be received by him, based upon the relation which the $100,000 of stock would bear to the total of $6,000,000 of stock; and that " Upon the full, final and complete payment to said Levi Hussey of all the stock and the $15,000 of bonds which he is entitled to receive as above provided, they shall be accepted by him and be in full payment and discharge of any and all claims, contracts and agreements which he may have or may have had with either Charles C. Dodge or DeWitt C. Flanagan, jointly or severally, in any manner concerning the Cape Cod Ship Canal."

The agreement next provides: " And the said De Witt C. Flanagan agrees to make delivery of said stock and bonds to said Levi Hussey, his legal representatives or assigns at the times hereinafter specified, out of the securities received by him and not otherwise; " and that " In the event that the said purchasers should fail to complete said Canal, or if they should fail to pay to said Flanagan the entire amount of stock and bonds which he will be entitled to receive from them on the completion of said Canal, under the contract between them, then and in that case this agreement may be ended, annulled and entirely abrogated by said Hussey by notice in writing to be given to said Flanagan and Dodge, on said Hussey returning or offering to return to said Flanagan of all bonds and stocks paid to said Hussey hereunder; — and each party hereto shall thereupon be restored to the rights possessed by him before this agreement was executed."

The agreement, coupled with the pleadings and the undisputed evidence, make out an unqualified agreement on the part of the defendant to pay to plaintiff the stock and bonds to the extent referred to, at such time as the defendant should obtain possession of the same.

That the defendant actually did receive $250,000 par value

of the bonds of the canal company and $1,400,000 par value of the stock of said canal company, is admitted by the defendant's answer. Notwithstanding this admission, the defendant failed to disclose upon the trial when he received this stock and these bonds, and, moreover, did not deny plaintiff's testimony that it was only through information given by some outsider at the end of 1913 that plaintiff learned that defendant was in possession of this stock and these bonds to the full amount which defendant was to obtain from the canal company and out of which the plaintiff was to be paid as per said agreement.

The defendant's contention is that the stock and bonds received by him were not the result of negotiations " now pending between " him and the persons referred to in the said agreement as the " responsible parties, who are expected to finance the construction of said canal," but came to him as the result of some agreements which he thereafter entered into with August Belmont & Company and which were wholly new and unrelated to the agreement above set forth. In other words, the defendant says: " Plaintiff's right to the securities in question was expressly conditioned upon the consummation of negotiations pending on March 20, 1906. The uncontradicted evidence established that such negotiations were never consummated."

There is no question but that August Belmont & Company were *the* " responsible parties " who were " expected to finance the construction of said canal," referred to in said agreement. These subsequent agreements, two in number, one of January 14, 1907, and the other of May 26, 1909, contain modifications relating to the financial details of an agreement of February 21, 1906, made between the defendant and August Belmont & Company. To none of them was plaintiff a party, nor is knowledge of particular or detailed arrangements entered into between defendant and Belmont & Company, other than the fact that Belmont & Company were financing the project, imputed or brought to the knowledge of the plaintiff. Moreover, plaintiff testified, without contradiction from the defendant, that, notwithstanding the first of these new agreements under which defendant claims exoneration of liability, dated January 14, 1907, defendant spoke to plaintiff in June, 1907, telling him that the stock had not yet been issued, that plaintiff need not worry, and that he would let plaintiff know as soon as the stock was issued; that he saw the defendant between 1907 and 1909; spoke to him about his contract, and during none of those meetings did the defendant intimate anything about new negotiations or the non-consummation of those pending in 1906; and about November 18, 1909, defendant informed plaintiff

that stock would not be issued before the canal was completed. Plaintiff was being informed from time to time by Mr. Dodge as to what Belmont & Company were doing in the matter. In December, 1913, plaintiff taxed the defendant with having received the stock. Defendant then sought to learn who had given plaintiff the information. The result of that conversation was that plaintiff made a demand for a settlement, and defendant told him to send him what papers he had, and that he (defendant) "would see what could be done." Plaintiff expressly stated that at no interview with the defendant did the latter ever inform him "that the negotiations with Belmont had fallen through and failed."

At the close of the case, and after plaintiff's counsel moved for a direction of a verdict, the following appears in the record: "The Court: Is there any question of fact which the defendant wishes submitted to the jury? Defendant's Counsel: I ask to go to the jury on the question of whether the negotiations which were pending at the time of the execution of the contract, which is the basis of the plaintiff's action, were consummated. The Court: I deny it. Is that the only question you have in mind that you want to go to the jury on? Defendant's Counsel: Yes."

This request was properly refused. In my opinion, there was nothing in the record from which it could be said that there was uncertainty whether the negotiations pending at the time the defendant made the agreement of March 20, 1906, to pay the plaintiff the stock and bonds therein mentioned, were consummated. On the contrary, the evidence, I think, permitted but one conclusion, and that was that the defendant by his representations to plaintiff construed the subsequent agreements with Belmont & Company as part and parcel of the negotiations pending at the time the said agreement of March 20, 1906, was entered into. The salient features of the subsequent agreements do not indicate any departure from the subject-matter of the agreement of March 20, 1906. They were entered into to carry out the purposes contemplated in said agreement, namely, "the financing and construction of the Cape Cod Ship Canal."

The plaintiff and defendant contemplated the completion of a specified piece of work, or the effectuation of a certain specified result, namely, the building of this ship canal. Nothing to which the plaintiff was a party canceled or terminated that agreement. Their relation continued until the object had been accomplished, and the stock and bonds which the defendant received for and on behalf of plaintiff were paid over to the former by those parties who financed and constructed the canal. At no time did the power rest in the defendant to terminate his arrangement with the plaintiff

and continue the enterprise for his own benefit. The defendant must be held to have deceived the plaintiff. He never divulged the receipt of the stock and bonds, but, on the contrary, lulled the plaintiff into the belief that he had not received them and would disclose the fact when he did.

He was plaintiff's trustee or agent in the receipt of the plaintiff's share of the stock and bonds and on their receipt held them for plaintiff in such relation, and when he refused to deliver them on demand there was a conversion for which the defendant was liable to the plaintiff. The defendant's conduct constituted a tortious act. (*Smith* v. *Frost,* 70 N. Y. 65, 71.)

The remaining question is: Was the court justified in directing a verdict for plaintiff for a sum of money representing the par value of the stock and bonds? The defendant did not ask to go to the jury on the question of the value of the converted property. His only request in this connection was that the court should direct the jury that they " may find only a verdict for nominal damages." Cases are cited to the effect that, in the absence of proof upon the subject, the stocks and bonds would be presumed to be of the value appearing upon their face. (*Weigley* v. *Kneeland,* 18 App. Div. 47, 53; *Whitehead* v. *Heidenheimer,* 57 id. 590, 598.) Cases said to hold the contrary have also been cited. (*Warren* v. *Stikeman,* 84 App. Div. 610, 611; *Griggs* v. *Day,* 158 N. Y. 1, 23.) It does not seem to me necessary to determine the question. There was some evidence that the bonds bore and paid interest. There was proof that $200,000 in cash was deposited to obtain the canal company's charter from the State of Massachusetts. The negotiations and agreements between the defendant and Belmont & Company provided for the formation of a construction company, and the documentary evidence together with the actual receipt by defendant of his allotment of stock and bonds properly left it to be inferred that the construction company was duly paid for its work of constructing the canal in the stock and bonds of the canal company. The construction of this canal was undoubtedly costly and represented a substantially large money outlay. The agreement between the defendant and August Belmont & Company of January 14, 1907, characterizes the defendant as the " vendor " and Belmont & Company as the " purchasers." It recites the expenditure by the " vendor " of " large sums of money in connection with the organization, exploitation and development of the project authorized under the aforesaid charter of the Canal Company." It provides for the organization of the construction company by the " purchasers," the purchasers to subscribe $225,000 par value of the capital stock and the vendor to subscribe $200,000 par value

of the capital stock out of $1,000,000 issued by such construction company, ten per cent to be *paid* at the time of such subscription and the balance when called for by the construction company. It provides for the formation by the " purchasers " of a syndicate to purchase from the construction company $5,750,000 bonds of the canal company at a price of ninety-five per cent of the face value thereof and of $575,000 of the capital stock of the construction company at par value, each of the subscribers to the said bonds to subscribe ten per cent of the amount of his subscription to said bonds in the stock of the construction company at par, such subscription to the stock of the construction company to be *payable* at the time of subscribing, and the balance of the subscriptions to be payable *in cash* in installments, said amounts to be applied to the construction of said canal and other expenses.

The agreement of May 26, 1909, modifying the agreement of January 14, 1907, recites the organization of the construction company pursuant to the last-mentioned agreement; that in consideration of such construction it had been agreed to issue stock of the canal company of the par value of $5,990,000 and bonds of the canal company of the face value of $6,000,000; and that said construction company had " commenced " the work. It next recites then existing " unfavorable financial conditions " and provides for a reduction of the amount of stock and bonds to be bought by the syndicate so to be formed by the " purchasers," so that the cost to the subscribers would be an amount aggregating $3,306,250, the subscribers to the said syndicate to pay their several subscriptions to the syndicate " in cash " in installments specified, the last of which was on July 1, 1911.

As the defendant admits having received $250,000, face value, of the bonds of the canal company, and $1,400,000 par value of stock of said company, it seems to me that under the agreements in evidence, plus such other testimony as was given and already referred to, it could hardly be said that this stock and these bonds were so wholly devoid of value as to require compliance with defendant's request for a direction of a verdict for nominal damages only. Had the defendant requested the court to submit the question of value to the jury, a different proposition would have been presented. In the condition in which this record comes to us, the evidence is undisputed that the stock and bonds had a substantial value, and a verdict directed for plaintiff for the face value thereof was not unwarranted when the question of their value was left to the trial court for determination.

13

I advise that the judgment and order appealed from be affirmed, with costs.

Kelly, P. J., and Rich, J., concur; Jaycox and Manning, JJ., dissent on the ground that upon the evidence presented the plaintiff was only entitled to nominal damages.

Judgment and order affirmed, with costs.